IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 33158

| | | |
|---|---|---|
| VERDENE PAGE, | ) | |
| | ) | |
| Claimant-Appellant, | ) | Boise, December 2007 |
| | ) | |
| v. | ) | 2008 Opinion No. 19 |
| | ) | |
| McCAIN FOODS, INC., Employer, TRANSCONTINENTAL INSURANCE COMPANY, Surety, | ) ) ) | Filed: January 31, 2008 |
| | ) | Stephen W. Kenyon, Clerk |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the Industrial Commission.

Decision by Industrial Commission <u>affirmed in part, reversed in part</u> and <u>remanded</u>.

L. Clyel Berry, Chtd., Twin Falls, for appellant. L. Clyel Berry argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondent. Glenna Mae Christensen argued.

---

BURDICK, Justice

This is an appeal from a decision by the Industrial Commission on a workers' compensation claim. The claimant asks the Court to decide whether the determinations are supported by substantial and competent evidence, whether her motion to reconsider was timely filed, and whether she is entitled to attorney fees. We affirm in part, reverse in part, and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant VerDene Page was employed by McCain Foods, Inc. (McCain). On August 17, 2001,

> Page felt her left knee "grab" and experienced pain in the knee as she rose from a chair in the break room at work. She rubbed the knee and the pain went away. A couple hours later, Page was seated at a table engaged in doing a "key report." She rose from her seat, her left leg "grabbed" again and she experienced pain in her knee.

*Page v. McCain Foods, Inc.*, 141 Idaho 342, 344, 109 P.3d 1084, 1086 (2005).

1

Page filed a claim for workers' compensation benefits. The Idaho Industrial Commission (the Commission) determined that Page sustained a torn meniscus in her left knee, on which Dr. Joseph R. Petersen performed surgery, and that Page suffered from several preexisting conditions including degenerative disc disease and degenerative joint disease. The factual conclusions also showed that since August 17, 2001, Page has been treated for several conditions including back pain, knee pain, a panic attack, and depression. Ultimately, however, the Commission denied Page's claim. Page appealed, and subsequently this Court reversed and remanded the claim holding the Commission erred in concluding Page's claim was barred for lack of proper notice and in concluding Page did not experience an "accident." *Page*, 141 Idaho at 349, 109 P.3d at 1091.

On remand, the Commission awarded Page total disability and related medical care benefits through November 26, 2001, awarded Page a "1% whole person" permanent impairment, and awarded Page a 5% permanent partial disability resulting from the accident. The Commission also determined Page failed to show she qualified for "odd-lot" status and determined she was not entitled to attorney fees for the first appeal.

Page made two motions to reconsider, a motion for additional findings, a motion to reopen the record, and a motion to review the record to correct a manifest injustice. The Commission denied these motions. Page once again appeals.

## II. STANDARD OF REVIEW

The Court may set aside an order or award by the Industrial Commission if: (1) the commission's findings of fact are not based on any substantial competent evidence; (2) the commission has acted without jurisdiction or in excess of its powers; (3) the findings of fact, order or award were procured by fraud; or (4) the findings of fact do not as a matter of law support the order or award. I.C. § 72-732; *Ewins v. Allied Sec.*, 138 Idaho 343, 345-46, 63 P.3d 469, 471-72 (2003). This Court exercises free review over the Commission's legal conclusions but does not disturb factual findings that are supported by substantial and competent evidence. *Ewins*, 138 Idaho at 346, 63 P.3d at 472. "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. This Court views all facts and inferences "in the light most favorable to the party who prevailed before the Commission." *Taylor v. Soran Rest., Inc.*, 131 Idaho 525, 527, 960 P.2d 1254, 1256 (1998) (internal quotations and citation omitted).

2

## III. ANALYSIS

On appeal, Page argues that she should have been awarded benefits beyond November 26, 2001, that the Commission should have reviewed its order to correct a manifest injustice, that she suffered more than a 1% whole person permanent impairment and more than a 5% permanent partial disability, and that she is totally and permanently disabled pursuant to "odd-lot" theories. Page also asserts her motion to reconsider was timely filed and that the Commission's failure to address the merits of the motion was error. Finally, she contends the Commission erred when it failed to award Page attorney fees for the first appeal and that Page is entitled to an award of attorney fees for the present appeal.

### A. Manifest Injustice

The Commission concluded Page was entitled to income benefits and medical benefits for her knee injury from August 18, 2001, through November 26, 2001. Page argues the Commission erred by terminating Page's income and medical benefits on November 26, 2001, and that the Commission should have reopened the case to correct a manifest injustice. We agree the Commission should have granted Page's motion to reopen the case to correct a manifest injustice and remand the case so the Commission can reconsider the date of medical stability in light of Page's motion.

A claimant is entitled to income benefits for total and partial disability "during the period of recovery." I.C. § 72-408. The statute does not define "period of recovery," but this Court has said the period of recovery ends when the worker is medically stable. *Hernandez v. Phillips*, 141 Idaho 779, 781, 118 P.3d 111, 113 (2005). Additionally, an employer must provide reasonable medical care for an injured employee "as may be reasonably required by the employee's physician or needed immediately after an injury . . . and for a reasonable time thereafter." I.C. § 72-432(1).

The Commission concluded Page was in a period of recovery from August 18, 2001, through November 26, 2001. Dr. Petersen, who performed surgery to repair Page's meniscus tear initially, opined Page was medically stable as to her knee on November 26, 2001. The parties agree that Page was scheduled to see Dr. Petersen on November 26, 2001, but did not show up for the appointment. In its order denying Page's second motion for reconsideration, the Commission indicates it "gave greater weight and credibility to the evidence presented by Dr. Petersen."

Page moved the Commission to review its order to correct a manifest injustice. In her motion, Page argues that it was a manifest injustice to terminate Page's income and medical benefits on November 26, 2001, because the only evidence supporting that determination is testimony by Dr. Petersen revealing he did not actually examine Page on that date. Additionally, Page supported her motion with a letter written by Dr. Petersen stating Page was not medically stable on November 26, 2001, that he was not previously aware that Page had followed up with Dr. Hicks after missing her November 26, 2001, appointment with Dr. Petersen, and furthermore, that Page has since followed up with Dr. Petersen and currently needs additional treatment which is partially attributable to Page's accident.

The Commission may review any order to correct a manifest injustice. I.C. § 72-719(3). The fact that I.C. § 72-719(3) becomes operative on the Commission's own motion "does not preclude the Commission from exercising its powers when notice of a purported manifest injustice is brought to its attention either by a party or a third party." *Banzhaf v. Carnation Co.*, 104 Idaho 700, 703, 662 P.2d 1144, 1147 (1983). Manifest injustice as a ground for review of an order "must be construed broadly." *Sines v. Appel*, 103 Idaho 9, 13, 644 P.2d 331, 335 (1982).

The Commission denied the motion to review its order to correct a manifest injustice stating there was insufficient factual basis to warrant a review.

In this case, it is clear that in determining Page's medical stability date the Commission relied exclusively on Dr. Petersen's statement that Page achieved clinical stability on November 26, 2001. Dr. Petersen was the only person to testify Page achieved clinical stability on that date, and the Commission noted it placed great weight on his testimony. It is unrebutted that Dr. Petersen's statement was not based upon an examination of Page or other medical follow-up. Therefore, contrary to the Commission's conclusion, a subsequent letter from Dr. Petersen stating that Page had not actually achieved medical stability on November 26, 2001, combined with the absence of any other evidence in the record to support the Commission's finding of medical stability constitute a sufficient factual basis to warrant review of the case to correct a manifest injustice. This is not to say that every medical provider who changes their mind provides grounds for an argument of "manifest injustice." Here, there was no evidence to support Dr. Petersen's original opinion of clinical stability and then when the relevant facts were brought to his attention he reviewed his record and appropriately revised his opinion. Thus, the

4

Commission's denial of Page's motion for review to correct a manifest injustice is reversed and the case is remanded.

**B. 1% Permanent Partial Impairment**

Page argues the Commission's determination that Page is entitled to only a 1% partial impairment was error because it lacks the specificity necessary for meaningful appellate review, did not sufficiently compare Page's pre-injury presentment with her post-injury presentment, and is not supported by substantial and competent evidence.

A determination of physical impairment is a question of fact for the Commission. *Soto v. J.R. Simplot*, 126 Idaho 536, 539, 887 P.2d 1043, 1046 (1994). This Court does not scrutinize the weight and credibility of evidence relied on by the Commission and will not disturb any findings regarding weight and credibility unless they are clearly erroneous. *Id.*

Permanent impairment "is any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved. . . ." I.C. § 72-422. A permanent impairment valuation "is a medical appraisal of the nature and extent of the injury . . . as it affects an injured employee's personal efficiency in the activities of daily living. . . ." I.C. § 72-424. When appraising the injury's affect on daily living activities, "there is a potentially wide spectrum of material and relevant evidence worthy of consideration, beyond the particular opinion of a physician asked to give an impairment rating." *Soto*, 126 Idaho at 539, 887 P.2d at 1046.

The Commission found Page has a 1% physical impairment and supported its finding with reference to Dr. Petersen's chart comment that an impairment exists and Dr. Hicks's and Dr. Petersen's observations of Page's continuing knee pain. This finding is capable of appellate review. *See Ball v. Daw Forest Prods. Co.*, 136 Idaho 155, 160, 30 P.3d 933, 938 (2001) (holding the Commission's impairment rating was capable of appellate review even though it did not articulate in detail exactly how it arrived at that number).

Page argues the Commission's finding was erroneous because it did not sufficiently take into account how her post-injury accident affected Page's personal efficiency in her daily living. Page points to testimony from Page's co-worker that Page did not experience difficulty performing her job duties prior to the accident; Page's testimony that prior to the accident she did not experience any serious injuries to her person and that post-accident she had difficulty performing many daily living activities (e.g., walking, doing dishes, bending down); and Dr. Petersen's testimony that Page's physical restrictions including walking, kneeling, squatting, and

5

lifting. In substance Page is asking this Court to make its own factual determination from the record. However, this Court does not "re-weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented." *Seufert v. Larson*, 137 Idaho 589, 593, 51 P.3d 403, 407 (2002). Furthermore, according to the statute, the physical impairment evaluation appraises the *injury as it affects efficiency* in the activities of daily living. I.C. § 72-424. The testimony Page references does not show that it is the accident injury instead of Page's other conditions that make her inefficient in the activities of daily living.

Additionally, there was testimony by Dr. Petersen that Page's injury resulted in a one to two percent impairment rating. This opinion was formed after the initial hearing, was brought forth in Page's direct examination of Dr. Petersen, was objected to, and the Commission sustained the objection. Consequently, Page argues Dr. Petersen's rating is not properly before this Court.

However, Page has failed to show that if the Commission relied on Dr. Petersen's impairment rating, it did so erroneously. Though the Commission noted it sustained the objection to Dr. Petersen's impairment rating, it also explicitly included Dr. Petersen's deposition as evidence in the record, which was considered by the Commission. The Commission need not strictly adhere to the rules of evidence and has the discretion to consider any type of reliable evidence having probative value. *Stolle v. Bennett*, 144 Idaho 44, ___, 156 P.3d 545, 551 (2007); *see also* I.C. 67-5251(1). This Court has held the Commission erroneously upheld an objection when the claimant established the witness at issue was familiar with the subject matter, reasonableness of hospitalization bills, on which he was to testify. *Brooks v. Duncan*, 96 Idaho 579, 584, 532 P.2d 921, 926 (1975). Similarly, here, the record establishes Dr. Petersen was familiar with Page's condition, that he performed surgery on her torn meniscus, and that in 2003 his chart notes indicate Page's torn meniscus had an impairment rating. Page does not show Dr. Petersen's actual impairment rating, which at the time of the deposition was testimony Page solicited, lacks reliability or probative value such that the Commission properly sustained an objection to this evidence.

The Commission's finding states it is based on Dr. Petersen's acknowledgement of an impairment and Page's ongoing complaints of pain. It is likely the Commission's finding is also based on Dr. Petersen's impairment rating, which would be permissible evidence for the Commission to consider. While there may also be evidence in the record to support a factual

6

conclusion that Page has greater than a 1% impairment, Page does not point to any evidence in the record that would clearly mandate any such holding. This Court does not disturb factual findings that are supported by substantial and competent evidence, meaning "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Ewins*, 138 Idaho at 346, 63 P.3d at 472. We hold there is substantial and competent evidence to support the Commission's conclusion that Page has a 1% physical impairment and affirm the Commission's determination.

**C. Permanent Disability**

Page argues that the conclusion she has an apportioned 5% permanent partial disability is not supported by substantial and competent evidence. Page also argues the Commission erred when it denied her motion to reopen on the issue of apportionment. Finally, Page argues the Commission erred when it concluded Page failed to show she qualified for "odd-lot" status and consequently, did not show she has a total permanent disability.

1. 5% Permanent Disability & Apportionment

Page argues the Commission's apportionment is not capable of appellate review and is not supported by substantial and competent evidence. The degree of a permanent disability and the cause or causes of a disability are factual questions committed to the particular expertise of the Commission. *Thom v. Callahan*, 97 Idaho 151, 155, 157, 540 P.2d 1330, 1334, 1336 (1975). A claimant has permanent disability "when the actual or presumed ability to engage in gainful activity is reduced or absent because of permanent impairment and no fundamental or marked change in the future can reasonably be expected." I.C. § 72-423. A permanent disability rating is the appraisal of the claimant's "present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by pertinent nonmedical factors as provided in [I.C. § 72-430]."[1] I.C. § 72-425. "The central focus of [I.C. § 72-425] is

---

[1] Idaho Code 72-430(1) provides:

> In determining percentages of permanent disabilities, account shall be taken of the nature of the physical disablement, the disfigurement if of a kind likely to handicap the employee in procuring or holding employment, the cumulative effect of multiple injuries, the occupation of the employee, and his age at the time of accident causing the injury, or manifestation of the occupational disease, consideration being given to the diminished ability of the afflicted employee to compete in an open labor market within a reasonable geographic area considering all the personal and economic circumstances of the employee, and other factors as the commission may deem relevant, provided that when a scheduled or unscheduled income benefit is paid or payable for the permanent partial or total loss or loss of use of a member or organ of the body no additional benefit shall be payable for disfigurement.

on the 'ability to engage in gainful activity.'" *Smith v. Payette County*, 105 Idaho 618, 621, 671 P.2d 1081, 1084 (1983) (quoting *Baldner v. Bennett's Inc.*, 103 Idaho 458, 462, 649 P.2d 1214, 1218 (1982)).

If the degree of disability resulting from an industrial injury is increased because of a preexisting physical impairment, the employer is liable only for the disability from the industrial injury. I.C. § 72-406(1). There is a presumption the Commission by its experience is able to judge the causative factors in a particular case, and the Commission is "allowed a degree of latitude in making an apportionment." *Reiher v. Am. Fine Foods*, 126 Idaho 58, 62, 878 P.2d 757, 761 (1994). This Court will not overturn an apportionment when it is supported by substantial and competent, although conflicting, evidence. *Id.* When the Commission apportions permanent disability so as to absolve the employer for compensating for preexisting injuries, the Commission must explain its apportionment determination with sufficient rationale to enable this Court to determine whether it is supported by substantial and competent evidence. *Id.*

In this case, the Commission did not make a separate finding as to the degree of permanent disability and then apportion that disability between the pre-existing injuries and the accident injury. Instead, without articulating the degree of permanent disability, the Commission merely stated 5% of Page's permanent disability was due to the accident injury. Page complains that the Commission erred by first failing to specify Page's total disability from all causes.

The Court addressed this same issue in *Horton v. Garrett Freightlines, Inc.*, 115 Idaho 912, 772 P.2d 119 (1989). In that case, the Commission determined the claimant, who had pre-existing medical conditions, had a 30% permanent disability as a result of the industrial accident. The claimant asserted the Commission erred by failing to take into account physical impairments that arose after his industrial injury when making its permanent disability determination. *Id.* at 914, 772 P.2d at 121. We observed there are two steps when making an apportionment: (1) evaluating the claimant's permanent disability in light of all of his physical impairments, resulting from the industrial accident and any pre-existing conditions, existing at the time of the evaluation; and (2) apportioning the amount of the permanent disability attributable to the industrial accident. *Id.* at 915, 772 P.2d at 122. Though the Commission's decision in *Horton* left out the first step, we did not overrule its finding because we were convinced the Commission "simply stated its conclusion without setting forth the result of the initial evaluation of permanent disability" and its finding was supported by substantial and competent evidence. *Id.*

However, *Horton* is distinguishable from the present case. In that case the record clearly showed all of the claimant's physical impairments rendered him permanently and totally disabled. In this case, there is no clear indication as to Page's permanent disability in light of the accident and her pre-existing conditions, and we cannot say we are convinced the Commission made the necessary determination. Thus, because the Commission failed to articulate both steps in making its apportionment, we cannot review its decision. We therefore remand the case with instructions that the Commission evaluate Page's disability according to the factors in I.C. § 72-430(1), and make findings as to her permanent disability in light of all of her physical impairments, including pre-existing conditions, and that it then apportion the amount of the permanent disability attributable to Page's accident.

### 2. Motion to Reopen

Page moved the Commission to reopen its order "[t]o the extent [the Commission] is of the opinion that the record herein is inadequate or insufficient to allow the Commission to fully consider issues presented or make decisions thereupon. . . ." Page then cites to the Commission's comment in its decision as to apportionment that "[t]he amount of permanent disability apportionable to this claim is not specifically quantified by any testimony of record." Page argues that apportionment is an affirmative defense on which McCain bears the burden of proof and that when conducting hearings the Commission is required to make such inquiries and investigations as may be deemed necessary, I.C. § 72-714(3).[2]

The Commission denied the motion, noting that the parties were given the opportunity to present evidence at hearing and post-hearing briefs were submitted to the Commission. There is no support for the contention that the Commission failed in its duty to make such inquiries and investigations as it deemed necessary. The Commission's statement that there was no testimony of record specifically quantifying Page's permanent disability does not necessarily lead to a conclusion that the Commission felt there was inadequate evidence to make a determination. We hold the Commission did not err by declining to reopen the record on the issue of apportionment.

### 3. Odd-lot

---

[2] There is no support for the proposition that apportionment is an affirmative defense. It is a statutory dictate that an employer is only liable for the disability attributable to the industrial injury or occupational disease when the permanent disability is less than total. I.C. § 72-406(1). Therefore, the statute calls upon the claimant to produce evidence to persuade the Commission as to the percentage of permanent disability, if any.

9

Whether a claimant is totally and permanently disabled is a question of fact. *Boley v. State*, 130 Idaho 278, 280, 939 P.2d 854, 856 (1997). A claimant may prove a total and permanent disability by showing her medical impairment together with the nonmedical factors total 100% or by showing she fits within the definition of an "odd-lot" worker. *Id*. at 281, 939 P.2d at 857. Odd-lot workers are persons who are so injured in that they are unable to perform services other than those limited in quality, dependability, or quantity "that a reasonably stable market for them does not exist." *Id*. (internal quotations and citation omitted). An odd-lot worker need not be "physically unable to do anything worthy of compensation. . . . " *Lyons v. Indus. Special Indem. Fund*, 98 Idaho 403, 406, 565 P.2d 1360, 1363 (1977). An odd-lot worker may be physically able to perform some work but is "so handicapped that [he] will not be employed regularly in any well-known branch of the labor market absent a business boom, the sympathy of a particular employer or friends, temporary good luck, or a superhuman effort on [his] part." *Id*.

The claimant bears the burden of proving a prima facie case of odd-lot status. *Boley*, 130 Idaho at 281, 939 P.2d at 857. If the claimant proves a prima facie case, the burden then shifts to the employer to "show that some kind of suitable work is regularly and continuously available to the claimant." *Lyons*, 98 Idaho at 406, 565 P.2d at 1363. Odd-lot status is a question of law only when "the evidence is undisputed and is reasonably susceptible to only one interpretation." *Boley*, 130 Idaho at 281, 939 P.2d at 857 (internal quotations and citations omitted). Where a dispute exists as to extent of disability, the type of work claimant can perform, and the efforts made to find employment, odd-lot status is a question of fact for the Commission. *Id*.

To prove odd-lot status, it was necessary for Page to show that any efforts to find suitable employment would be futile.[3] *See id*. In determining whether a claimant is able to gain regular employment, the Commission must consider the medical factor of permanent impairment and the pertinent non-medical factors set forth in I.C. § 72-430. *Bybee v. State*, 129 Idaho 76, 83, 921 P.2d 1200, 1207 (1996).

The Commission concluded Page failed to show that she qualifies for odd-lot status. Page contends this conclusion was error and emphasizes she has no office skills or experience,

---

[3] A claimant may also prove odd-lot status by showing she has unsuccessfully attempted other types of employment or by showing she or vocational counselors or employment agencies on her behalf have searched for other work, but other work is not available. *Boley*, 130 Idaho at 281, 939 P.2d at 857. Page does not contend she made a prima facie showing of odd-lot status based on either of those methods.

only a tenth grade education, is unsophisticated, has several physical restrictions, and that Dr. Hicks testified Page is not capable of being gainfully employed. Page cites to opinions of two doctors identifying Page's physical restrictions; however, none of the restrictions listed include sitting. Furthermore, though Dr. Hicks testified Page was incapable of any employment, Dr. Petersen testified Page was capable of being employed in sedentary positions. Additionally, McCain points out that although Dr. Hicks testified Page was incapable of employment, he also testified Page is capable of functions such as reaching overhead, finely manipulating and gripping with her hands, some pushing and pulling, performing activities at protected heights, and working around moving machinery.

The record supports a conclusion that Page has failed to establish a prima facie case that she qualifies for odd-lot status. Dr. Petersen testified Page is capable of employment in sedentary positions. Furthermore, though Page emphasizes her lack of education and office skills, the record shows while working for McCain she had the skills required to input information in a computer. Thus, we hold the Commission's determination that Page failed to make a prima facie case of odd-lot status is supported by substantial and competent evidence.

## D. Timeliness of Motion to Reconsider

Page moved the Commission to reconsider its order. However, the Commission declined to address this motion on the merits because it was not timely filed. On appeal to this Court, Page insists the motion was timely filed.

Motions to reconsider must be made within twenty days from the date of filing the decision. I.C. § 72-718. This Court has observed there is a difference between "make" and "file" as used in this statute, and we have held that a motion mailed twenty days after the filing date of the decision but not filed until twenty-one days after the filing date of the decision is timely filed. *Wright v. Willer*, 111 Idaho 474, 475-76, 725 P.2d 179, 180-81 (1986). Nonetheless, Page concedes she did not mail her motion to reconsider until the twenty-first day following the Commission's order. Page asserts she is protected by I.R.C.P. 6(a) which states that when computing a period of time, the last day of the period runs until after the next day which is neither a Saturday, a Sunday, nor a holiday. The twentieth day following the order was July 4th. Consequently, Page argues the combined effect of this Court's holding in *Wright* and I.R.C.P. 6(a) was to allow her to move for reconsideration on July 5th, twenty-one days after the order was filed.

However, Page cannot rely on I.R.C.P. 6(a). The Idaho Rules of Civil Procedure govern in the district courts and the magistrate's division of the district courts. I.R.C.P. 1(a). The Industrial Commission is not a division of the district court. *See* I.C. § 72-501(1) (statutory creation of the Industrial Commission as an executive department of the state government). Furthermore, the Commission has the authority to "promulgate and adopt reasonable rules and regulations involving judicial matters" and to the extent the regulations are consistent with law, they are binding.[4] I.C. § 72-508.

Nonetheless, the computation of time in I.C. § 72-718 is controlled by I.C. § 73-109 which provides that "[t]he time in which any act provided by law is to be done is computed by excluding the first day, and including the last unless the last is a holiday and then it is also excluded." Therefore, because July 4th is a holiday, I.C. § 73-108, and it was twenty days from the date of the filing of the Commission's decision, it is excluded from the computation of time consequently, the last day on which Page could move for reconsideration was July 5th. Page complied with this requirement. Therefore, we reverse the Commission's denial of Page's motion for reconsideration.

**E. Attorney Fees**

Page argues the Commission erred by failing to award her attorney fees on the first appeal and that she is entitled to attorney fees for this appeal.

An employer must pay reasonable attorney fees when the Commission or any court hearing workers' compensation proceedings "determines that the employer or his surety contested a claim for compensation . . . without reasonable ground. . . ." I.C. § 72-804. A decision that grounds exist to award attorney fees is a factual determination, resting with the Industrial Commission. *Lopez v. Amalgamated Sugar Co.*, 107 Idaho 590, 591, 691 P.2d 1205, 1206 (1984). The determination that a claimant is not entitled to attorney fees will be affirmed if it is supported by substantial and competent evidence. *Id*.

1. Attorney fees for the first appeal

---

[4] Pursuant to its statutory authority, the Commission has promulgated "Judicial Rules of Practice and Procedure Under the Idaho Workers' Compensation Law." Those rules require a motion to reconsider pursuant to I.C. § 72-718 be *filed* within 20 days from the date of the final decision. *See* J.R.P. 3(F) (emphasis added). We note that this rule is inconsistent with the law insofar as it conflicts with the statutory language in I.C. § 72-218 and, thus, does not govern. *See* I.C. § 72-508.

On the first appeal, this Court held there was an accident and that the employer had notice and remanded to the Commission noting:

> Because the claim for benefits has not been resolved and remand to the Commission is necessary, the determination of whether McCain has contested Page's claim without reasonable ground, which would be the cause of this appeal, should be left to the discretion of the Commission. If the Commission finds in favor of Page and awards benefits, the Commission should determine if attorney fees based on this appeal should be awarded.

*Page,* 141 Idaho at 348-49, 109 P.3d at 1090-91.

On remand, the Commission declined to award attorney fees:

> Considering the lack of written notice, the equivocal medical records, and the procedural posture of this case, Defendants' actions in denying the claim were not unreasonable. For the same reasons, attorney fees based on Claimant's appeal are also denied.

Page contends the failure to award attorney fees was error because written notice is not necessary, there are no equivocal medical records whether Page suffered her knee injury in the course of employment, and because there was nothing unusual concerning the procedural matters of this case. We must determine whether the Commission's determination of reasonableness is supported by substantial and competent evidence.

The law is clear that written notice is not required and in this case, Page gave immediate oral notice of her injury. Second, there was little support to say there was no accident when Page reported she was at work, stood up, and her knee "grabbed." The equivocal medical records go towards the extent of injury due to the accident but not the subject matter of the first appeal— notice and occurrence of accident. Finally, the procedural posture of the case shows that on appeal this Court found for Page. Therefore, we reverse and hold the Commission's denial to award attorney fees on the first appeal is not supported by substantial and competent evidence.

2. Attorney fees for the present appeal

Page asserts she is entitled to an award of attorney fees for the present appeal because McCain has unreasonably argued there was substantial and competent evidence to support the termination of Page's income and medical care benefits on November 26, 2001. Page has raised several issues on appeal and does not prevail on every issue. Since Page only prevails in part on appeal, she is not entitled to attorney fees on appeal. *See Hoskins v. Circle A. Constr., Inc.*, 138 Idaho 336, 343, 63 P.3d 462, 469 (2003).

13

## IV. CONCLUSION

We reverse the Commission's denial of Page's motion to review the case to correct a manifest injustice. We hold the Commission's physical impairment finding is supported by substantial and competent evidence but reverse and remand on its finding of apportionment of Page's permanent disability. We also reverse the Commission's denial of Page's motion to reconsider on the basis of timeliness. Finally, we reverse on the Commission's finding that Page is not entitled to attorney fees on the first appeal, but we decline to award attorney fees for the present appeal. Costs to appellant.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, **CONCUR.**