# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34151

| | | |
|---|---|---|
| PERRY JOE FOWBLE, | ) | |
| | ) | |
| Claimant-Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | Boise, May 2008 Term |
| SNOLINE EXPRESS, INC., Employer, and | ) | |
| LIBERTY NORTHWEST | ) | 2008 Opinion No. 101 |
| INSURANCE CORPORATION, Surety, | ) | |
| | ) | Filed: August 1, 2008 |
| Defendants, | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| and | ) | |
| | ) | SUBSTITUTE OPINION. |
| STATE OF IDAHO, INDUSTRIAL | ) | THE PRIOR OPINION ISSUED |
| SPECIAL INDEMNITY FUND, | ) | JUNE 18, 2008 IS HEREBY |
| | ) | WITHDRAWN. |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the Idaho Industrial Commission. Referee Alan Reed Taylor.

The decision of the Industrial Commission is <u>affirmed.</u> No attorney's fees are awarded to respondent. Costs are awarded to respondent.

Kirkendall Law Office, Boise, for appellant. Lawrence E. Kirkendall argued.

Ludwig, Shoufler & Miller, Boise, for respondent. Daniel A. Miller argued.

---

W. JONES, Justice

## I. STATEMENT OF THE FACTS

Perry "Joe" Fowble (Fowble) is a former truck driver who filed a claim against the Idaho State Special Indemnity Fund (ISIF), alleging that he was totally and permanently disabled due to the combined effects of his previous injuries and his most recent injury. The Referee concluded that Joe Fowble was indeed totally and permanently disabled as an "odd lot" worker,

1

and apportioned liability between his employer's surety and ISIF. The Industrial Commission upheld the finding and ISIF accordingly appeals.[1]

Throughout his career, Fowble was employed at several locations:

- He worked at a potato processing plant in 1969.

- During most of the 1970's he performed auto body work at Peterson Motors, Anderson Buick, and Miller Stephan.

- From 1979-1981, he worked at his own auto body shop.

- During the first part of the 1980's, he began driving his own logging trucks.

- He hauled meat and potatoes for Armour Meats in 1986. At this job, Fowble often was required to unload containers exceeding 200 pounds.

- About 1994, Fowble began working for Navajo Express hauling beef from Boise to Ontario. He was not required to load or unload that freight. In September of 2001, Navajo Express terminated Fowble's employment.

- Finally, in June 2003, Fowble began work as a truck driver for Snoline Express.

Fowble's most recent injury occurred on September 18, 2003 while in the employ of Snoline Express. Fowble struck his knee after slipping and falling while unloading a carton of flowers at Wal-Mart. As a consequence, Fowble's knee was injured, and a tooth was knocked out, another knocked loose. Dr. George Nicola treated Fowble, administering steroid knee injections and ordering physical therapy. Fowble's knee swelled and worsened due to the physical therapy. Dr. Nicola permitted Fowble to return to work on December 1, 2003. Eventually, Fowble was forced to undergo arthroscopic surgery performed by Dr. Robert Walker. Subsequent attempts at rehabilitation were unsuccessful. Dr. Walker forbade Fowble from continuously lifting more than 35 pounds and from occasionally lifting 50 pounds.

While recovering, Fowble sought employment by consulting with Danny Ozuna, an Industrial Commission rehabilitation consultant. Despite submitting at least 100 applications between March and December of 2004, Fowble enjoyed no success in his pursuit of employment. He filed for Social Security Disability benefits on December 15, 2004. The Referee concluded that Fowble's left knee was worse than his right, and that his condition is worse than before the accident at Wal-Mart. In fact, Fowble's knee becomes swollen and causes

---

[1] The surety for Fowble's employer has settled the workers' compensation claim with Fowble and accordingly is not part of this appeal.

pain after an hour and a half of engaging in the everyday task of grocery shopping. In addition, on January 28, 2004, Fowble had "a considerable amount of thigh atrophy," and Dr. Walker believed that Fowble's symptoms would improve with further strengthening.

Because of various factors including Fowble's physical condition, vocational rehabilitation expert Barbara Nelson believed that Fowble was totally and permanently disabled. She determined through the Wide Range Achievement Test that Fowble could read at a third grade level and spell at a second grade level. He therefore was functionally illiterate and unable to complete job applications without assistance. Moreover, Douglas Crum, ISIF's own expert, maintained that Fowble possessed limited transferable skills and that his career prospects were limited to entry-level jobs that, at best, paid nominally better than minimum wage.

Prior to Fowble's most recent injury, he sustained several other injuries:

- In 1969, he injured both knees and fractured an ankle after being struck by several falling boxes of French fries while he was in the midst of unloading freight for Carnation. The injury necessitated surgery from which Fowble recovered well.

- In 1991 Fowble was involved in an automobile accident that resulted in disk herniations and cervical fusion surgery. After two years, he eventually recovered from the surgery and noticed no significant residual limitations.

- On January 3, 1998, he injured his right knee in a slip-and-fall incident while employed by Navajo Express. Fowble underwent additional surgery as a result of this injury, returning to work within three months.

- On April 16, 2001, while still employed for Navajo, he re-injured his knees hauling a trailer that he erroneously believed to be secured to his cab. When the trailer unexpectedly dropped, he was thrust forward, which caused his knees to smash into the dashboard. This accident resulted in surgery on his left knee.

Dr. Peterson determined that Fowble's right knee impairment was 10% of the lower extremity, due to the 1998 injury. In 2001, Dr. Friedman rated Fowble's left knee impairment at 2% of the whole person. Prior to the 2003 accident, Fowble's whole person impairment totaled 6% according to the Referee. Also prior to the 2003 accident, Dr. Peterson issued a medical statement as follows:

3

I have reviewed the independent medial (sic) examination done by Dr. Friedman. I agree with his findings (sic) specifically he does have a pre-existing degenerative condition to his knees, (sic) that alone may make it impossible for him to return to his driving occupation. I agree that he doesn't need any specific permanent restrictions or limitation and would expect him to improve over time.

Dr. Walker concluded that the 2003 accident caused permanent impairment of 5% of the whole person, whereas Dr. Nicola maintained that no impairment resulted from that accident. Walker opined that the 5% impairment was due to thigh atrophy that was separate from preexisting degenerative changes, stating that due to "thigh muscle atrophy, [Fowble] is judged to have a 5% impairment of the whole person, due to the 4 cm difference in thigh circumference. Mr. Fowble also has preexisting degenerative changes of the articular cartilage which were not included in his impairment rating as they preexisted his industrial injury," and further stated that "[o]f the 5% impairment of the whole person, there is no apportionment due to a preexisting medical condition." Fowble had attempted to improve his thigh atrophy, but only enjoyed limited progress. The Referee sided with Dr. Walker because Dr. Nicola's treatment produced negative effects that prompted Fowble to return to Dr. Walker for treatment.

Based on the foregoing facts, the Referee further concluded that Fowble was 65% permanently disabled, and that he was an "odd lot" employee after the 2003 injury but not before.

## II. ISSUES

Issue 1: Whether the Commission's finding that Fowble met his medical burden of proof was clearly erroneous.

Issue 2: Whether the Commission's finding that Fowble was not an "odd lot" employee before the 2003 accident was clearly erroneous.

Issue 3: Whether Fowble is entitled to costs or attorney's fees.

## III. STANDARD OF REVIEW

When reviewing a decision of the Industrial Commission, this Court exercises free review over questions of law, but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. Substantial and competent evidence is relevant evidence which a reasonable mind might accept to support a conclusion. It is more than a scintilla of proof, but less

4

than a preponderance. All facts and inferences will be viewed in the light most favorable to the party who prevailed before the Industrial Commission.

*Stolle v. Bennett*, 144 Idaho 44, __, 156 P.3d 545, 548-49 (2007) (internal quotations and citations omitted).

Moreover, the Supreme Court "will not disturb the Commission's conclusions on the weight of the evidence unless they are clearly erroneous." *Wheaton v. Indus. Special Indem. Fund*, 129 Idaho 538, 541, 928 P.2d 42, 45 (1996). It may set aside the Commission's order or award if:

> (1) the commission's findings of fact are not based on any substantial competent evidence; (2) the commission has acted without jurisdiction or in excess of its powers; (3) the findings of fact, order or award were procured by fraud; or (4) the findings of fact do not as a matter of law support the order or award.

I.C. § 72-732; *Page v. McCain Foods, Inc.*, 145 Idaho 302, __, 179 P.3d 265, 268 (2008).

## IV. LEGAL FRAMEWORK

The provisions of workers' compensation laws are to be liberally construed in favor of the claimant, as the humane purposes they seek to serve leave no room for narrow, technical construction. *Kinney v. Tupperware Co.*, 117 Idaho 765, 769, 792 P.2d 330, 334 (1990). Idaho Code § 72-424 provides that evaluation of permanent impairment "is a medical appraisal of the nature and extent of the injury or disease as it affects an injured employee's personal efficiency in the activities of daily living, such as self-care, communication, normal living postures, ambulation, elevation, traveling, and nonspecialized activities of bodily members." As the ultimate fact-finder, the Commission determines the extent of impairment, not a physician whose opinions are advisory only. *Urry v. Walker and Fox Masonry*, 115 Idaho 750, 755, 769 P.2d 1122, 1127 (1989). But, the "causal relationship of an injury to the claimant's employment must be supported by at least some medical proof." *Politte v. Dept. of Transp.*, 126 Idaho 270, 273, 882 P.2d 437, 440 (1994). The claimant's burden is met when he submits proof of causation "to a reasonable degree of medical probability," with "medical probability" being defined as "having more evidence for than against." *Jensen v. City of Pocatello*, 135 Idaho 406, 412, 18 P.3d 211, 217 (2000) (internal quotation omitted).

Idaho Code § 72-332(1) assigns liability to ISIF in circumstances in which a worker was totally and permanently disabled due to an injury arising out of and in the course of his employment, and the worker was already permanently physically impaired before the injury:

> If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the pre-existing impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled permanent disabilities, and the injured employee shall be compensated for the remainder of his income benefits out of the industrial special indemnity account.

In order to trigger ISIF's liability under I.C. § 72-332(1), the total and permanent disability must be the result of the "combined effects" of the preexisting and subsequent injuries.[2] If it is not, then ISIF is not liable. *Bybee v. State, Indus. Special Indem. Fund*, 129 Idaho 76, 81, 921 P.2d 1200, 1205 (1996). Regarding the "combined" requirement, the test is "whether, but for the industrial injury, the worker would have been totally and permanently disabled immediately following the occurrence of that injury." *Id.* In order to be characterized as "totally disabled," a worker does not have to be literally totally disabled or unable to engage in any activity worthy of compensation. *Arnold v. Splendid Bakery*, 88 Idaho 455, 463, 401 P.2d 271, 276 (1965). If he can perform only services so limited in quality, quantity, or dependability that no reasonably stable market for those services exists, the worker is totally disabled. *Id.* Such is the definition of an "odd lot" worker. *Reifsteck v. Lantern Motel & Cafe*, 101 Idaho 699, 700, 619 P.2d 1152, 1153 (1980).

There are three methods of proving odd lot status. The proponent of the existence of odd lot status must demonstrate: (1) the other types of employment that the worker attempted; (2) that the worker, vocational counselors, employment agencies, or job services have unsuccessfully searched for work for the worker; or (3) that any efforts of the employee to find suitable employment would be futile. *Dehlbom v. State, Indus. Special Indem. Fund*, 129 Idaho 579, 582, 930 P.2d 1021, 1024 (1997). If the Commission finds that a worker falls within the odd

---

[2] This provision also requires three other elements not at issue here: (1) that there was a preexisting impairment; (2) that the impairment was manifest; (3) that the impairment was a subjective hindrance. *Bybee v. State, Indus. Special Indem. Fund*, 129 Idaho 76, 80, 921 P.2d 1200, 1204 (1996).

lot category, it has made a factual determination; therefore, the factual finding will not be set aside if supported by substantial and competent evidence. *Reifsteck* at 701, 619 P.2d at 1154.[3] If the Commission finds that ISIF proved that the worker was an odd lot worker prior to the subsequent injury, ISIF has successfully established a defense, as ISIF has disproved the "combined" requirement of I.C. § 72-332(1). *Bybee* at 81-82, 921 P.2d at 1205-06.

A claimant must presumptively establish that he was not an odd lot worker prior to the last injury, a task that may be accomplished by "showing that [he] was working regularly at a job at the time of injury." *Id.* at 82, 921 P.2d at 1206. ISIF may overcome the presumption by demonstrating that the claimant's actual employment was due to a business boom, an employer's sympathy, temporary good luck, or a superhuman effort. *Id.* Additionally, since odd lot status requires that *no* suitable occupation be available to the worker, ISIF must show that the search for other suitable employment would have been futile. *Id.* at 82-83, 921 P.2d at 1206-07.

## V. ANALYSIS

**Issue 1**: Whether the Commission's finding that Fowble met his medical burden of proof was clearly erroneous.

ISIF objects to Dr. Walker's medical finding that Fowble's thigh atrophy was responsible for the additional medical impairment, because Fowble also suffered from a preexisting degenerative condition that may have been responsible for the additional lifting restrictions Dr. Walker imposed, which means that it cannot possibly be determined that the restrictions related to the thigh atrophy as opposed to the degenerative condition. However, given the fact that Fowble was determined to be additionally impaired due to his thigh atrophy, as well as the temporal proximity of the additional restrictions to the most recent accident, it is reasonable to conclude that the most recent accident was the source of the additional lifting restrictions. Therefore, it is reasonable to conclude that the most recent accident combined with the previous conditions to place Fowble within the odd lot classification. Such a finding is supported by medical evidence and it is not clearly erroneous to conclude that the medical evidence favors a finding that Fowble fell within the odd lot category, especially given that the Commission need only take contrary medical evidence as advisory.

---

[3] A claimant's odd lot status is a question of law only when the evidence is undisputed and leaves open only one interpretation as to whether the claimant possesses odd lot status. *McCain Foods, Inc.*, 145 Idaho at __, 179 P.3d at 273.

Even if it is true that the degenerative condition may have caused the worsened condition, that fact serves only as contrary evidence that the most recent accident caused Fowble's increased impairment. ISIF should not be able to escape liability every time it can present evidence that "something else" may have caused a claimant's injury. The degenerative condition indeed may have caused the injury, but it also is possible that it did not, and substantial competent evidence supports the Commission's conclusion that it did not cause the injury.

**Issue 2**: Whether the Commission's finding that Fowble was not an "odd lot" employee before the 2003 accident was clearly erroneous.

Substantial and competent evidence supports the Commission's conclusion that Fowble was not an odd lot worker prior to the injury, but was an odd lot employee afterward. Because Fowble was employed at the time of his injury, it was ISIF's burden to demonstrate that he was already an odd lot employee. ISIF cites the evidence that supports the conclusion that Fowble was an odd lot employee at the time of the accident (e.g., Fowble's statement that he returned to truck driving because "there wasn't nothing else to go back to"). The contrary evidence that he was not odd lot prior to the accident, though, is supported by substantial competent evidence. The sufficiency of the evidence is found within Dr. Walker's records as well as vocational rehabilitation expert Barbara Nelson's testimony regarding this exact point. Moreover, Dr. Peterson stated that Fowble's condition after the Navajo accident was likely to improve, and his prediction that Fowble might not be able to return to the trucking occupation proved false. The Court therefore will not reweigh the evidence, since odd lot status determination is a question of fact, and the Commission's conclusions are supported by substantial and competent evidence.

ISIF argues that the odd lot doctrine should be extended to include a worker who returns to unsuitable employment. In other words, ISIF argues that if the only work available to a worker is unsuitable for him, then the worker was already odd lot before he accepted the employment. However, the fact that a worker returned to unsuitable employment does not necessarily render him an odd lot worker. It may be true that in some cases a worker returned to unsuitable work because he was an odd lot worker, but in other cases a worker may have returned to such work without being odd lot. If a party wishes to prove that someone is an odd lot worker, that party should do so by proving that the worker's return to unsuitable employment required a superhuman effort. In other words, it is already possible to prove odd lot status by

demonstrating that the worker returned to unsuitable employment, but it must be done by demonstrating that the worker's efforts were superhuman. In the present case, ISIF failed to meet that burden of proof.

**Issue 3**: Attorney's fees.

Fowble seeks attorney's fees under Idaho Appellate Rule 11.1. This rule states the following:

> Every notice of appeal, petition, motion, brief and other document of a party represented by an attorney shall be signed by at least one (1) licensed attorney of record of the state of Idaho, in the attorney's individual name, whose address shall be stated before the same may be filed. A party who is not represented by an attorney shall sign the notice of appeal, petition, motion, brief or other document and state the party's address. The signature of an attorney or party constitutes a certificate that the attorney or party has read the notice of appeal, petition, motion, brief or other document; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If the notice of appeal, petition, motion, brief, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the notice of appeal, petition, motion, brief or other document including a reasonable attorney's fee.

This rule serves to sanction attorneys who violate the certification that they made when signing a notice of appeal. We cannot say that this appeal was so far outside the realm of reasonability that it warrants a sanction on the losing attorney. Fees therefore are not awarded.

## VI. CONCLUSION

For the foregoing reasons, the Commission's decision is affirmed and attorney's fees are not awarded to Respondent-Fowble. Costs to Respondent.

Chief Justice EISMANN, Justices BURDICK, J. JONES AND HORTON, **CONCUR.**

9