# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35169-2008

| | | |
|---|---|---|
| BETTY S. CHRISTENSEN, | ) | |
| | ) | **Coeur d'Alene, April 2009 Term** |
| Claimant-Appellant, | ) | |
| | ) | **2009 Opinion No. 62** |
| v. | ) | |
| | ) | **Filed: May 1, 2009** |
| S.L. START & ASSOCIATES, INC., | ) | |
| Employer, STATE INSURANCE FUND, | ) | **Stephen W. Kenyon, Clerk** |
| Surety, and STATE OF IDAHO, | ) | |
| INDUSTRIAL SPECIAL INDEMNITY | ) | |
| FUND, | ) | |
| | ) | |
| Defendants -Respondents. | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The order of the Industrial Commission is <u>affirmed</u>.

Michael J. Verbillis, Coeur d'Alene, for appellant.

Paul J. Augustine, Boise, for respondents Employer and Surety.

Jones, Brower & Callery, P.L.L.C., Lewiston, for respondent Industrial Special Indemnity Fund. Thomas W. Callery argued.

_____

EISMANN, Chief Justice.

This is an appeal from an order of the Industrial Commission holding that because the claimant was totally and permanently disabled prior to her most recent industrial injuries, her employer and the Industrial Special Indemnity Fund are not liable for the apportionment of benefits under Idaho Code § 72-332(1). We affirm the order of the Commission.

## I. FACTS AND PROCEDURAL HISTORY

Betty Christensen (Claimant) graduated from high school in 1977. In 1988, she completed a course of study in which she was trained as a medical secretary and assistant. She then worked in a variety of medical settings on a temporary basis until she obtained full-time

employment in 1990. In 1991, 1992, 1993, and 1994, Claimant suffered injuries to her right foot and ankle for which she received worker's compensation benefits. During the treatment of her foot, Claimant was diagnosed with a hereditary, progressive, neurological disease characterized by atrophy of the peroneal muscles. Her treatment for the neurological disease consisted primarily of pain management with high doses of narcotic pain relievers.

Claimant underwent four surgeries over a period of several years in an attempt to repair the damage to her right foot due to her work injuries superimposed on her neurological disease. The last surgery was in the spring of 1996 to stabilize her right foot. After that surgery, her foot had a very limited range of motion. Claimant's treating orthopedist advised her that she should be limited to sedentary work "for the rest of her life."

In 1996, she left her employment because her employer could no longer accommodate her physical restrictions resulting from her foot injuries and neurological condition. In 1997, or 1998, Claimant qualified for disability under Social Security and began receiving benefits. In 1997 Claimant commenced working part time for her treating physician. He had left the group with which he practiced and was starting his own practice. He was able to accommodate Claimant with limited hours, frequent breaks, and opportunities for sedentary work. Claimant initially worked sixteen to twenty hours a week, but in 1998 her hours were reduced to eight hours a week. As the physician's practice became busier, Claimant's employment terminated because he could no longer accommodate her physical limitations.

From May to October 2000, Claimant worked for another medical provider that was setting up a new office and hiring staff. In that employment, she worked an average of slightly more than ten hours per week. She later worked about two months for a physician whose nurse was on maternity leave, again working slightly more than ten hours per week.

In 2001, Claimant began working for another start-up medical practice. She remained there until February 2002. She initially worked fourteen hours per week, but in latter 2001 her treating physician limited her to working one day a week for eight to twelve hours due to her neurological condition. Claimant left that employment when the practice became busier and Claimant could no longer meet the demands of her employer.

In November 2002, Claimant began working for S.L. Start & Associates, Inc. (Employer), helping disabled persons learn social and basic living skills. Because of her physical limitations, Claimant was assigned to clients who did not need assistance in ambulation,

2

transfers, or assists. On December 5, 2002, Claimant was assisting co-workers in transferring a client from his wheelchair to a seat on the Employer's bus. When the client began to fall, Claimant grabbed his gait belt and kept him from falling. When doing so, she experienced pain in her shoulders, neck, mid and low back, and right lower extremity. Four days later, Claimant was helping a client enter a medical center when the client became dizzy. Claimant assisted the client (a very large woman) to a bench, but again experienced pain in the same areas she had injured days earlier.

On December 10, 2002, Claimant sought medical care for her injuries, initially complaining of low back pain. An MRI of Claimant's thoracic and lumbar spine showed degenerative changes at T10-11, L3-4, L4-5, and L5-S1. During her treatment, Claimant also complained that the great toe on her right foot was "rubbery." It had previously been surgically fused in a neutral position, but now it could move up and down. Claimant had surgery in 2003 and again in 2005 to re-fuse the toe. In late February 2003, Claimant reported pain in her right shoulder. A year later she underwent surgery on the shoulder. Her treating physician declared Claimant to have reached maximum medical improvement for her work-related injuries on October 21, 2005.

On April 24, 2003, Claimant commenced these worker's compensation proceedings against Employer and its surety, the State Insurance Fund, seeking benefits for the injuries she sustained on December 5 and 9, 2002. On August 6, 2004, Claimant filed a complaint against the Industrial Special Indemnity Fund (ISIF). Under Idaho Code § 72-332, it could be liable for benefits if Claimant's injuries combined with her pre-existing permanent physical impairment to render her totally and permanently disabled.

The matter was tried before a referee on November 29, 2006. At the time of the hearing, Claimant was forty-seven years of age. The referee issued written proposed findings of fact and concluded that Claimant was totally and permanently disabled prior to her 2002 accidents. It recommended that the Industrial Commission (Commission) adopt those findings and conclusions. The Commission adopted the referee's findings and, in addition, found that Claimant had not suffered any permanent partial impairment as a result of the 2002 injuries. Claimant then timely appealed.

## II. ISSUES ON APPEAL

1. Did the Commission err by failing to apportion Claimant's disability between her pre-existing injuries and her current injuries?

2. Is the Commission's finding that Claimant was totally and permanently disabled prior to her 2002 injuries supported by substantial, competent evidence?

3. Should this Court overrule *Bybee v. State of Idaho, Industrial Special Indemnity Fund* and *Hamilton v. Ted Beamis Logging and Construction*?

4. Is Employer entitled to an award of attorney fees on appeal?

## III. ANALYSIS

### A. Did the Commission Err by Failing to Apportion Claimant's Disability Between Her Pre-existing Injuries and Her Current Injuries?

Claimant contends that the Commission's decision in this case is not in conformity with this Court's opinion in *Page v. McCain Foods, Inc.*, 145 Idaho 302, 179 P.3d 265 (2008). Page contended that the injury from her industrial accident combined with her pre-existing physical impairments to render her totally and permanently disabled. The Industrial Commission found that Page had a 5% permanent disability from her industrial accident, but did not make a finding as to whether she had a greater permanent disability when considering her alleged pre-existing physical impairments combined with her subsequent injury. "[W]ithout articulating the degree of permanent disability, the Commission merely stated 5% of Page's permanent disability was due to the accident injury." *Page*, 145 Idaho at 309, 179 P.3d at 272.

*Page* relied upon our opinion in *Horton v. Garrett Freightlines, Inc.*, 115 Idaho 912, 772 P.2d 119 (1989), in which we held that apportioning disability under both Idaho Code §§ 72-406(1) and 72-332(1) required two-steps. First, the Commission must determine the claimant's disability when considering the pre-existing physical impairment(s) and the subsequent injury, and second it must then apportion disability between the injury and the pre-existing impairment(s). *Horton*, 115 Idaho at 915, 772 P.2d at 122. If the first step is not done, "there would be no determination of disability that would permit an apportionment for pre-existing impairments under I.C. §§ 72-406 and 72-332." *Id.* at 917, 772 P.2d at 124.

That two-step analysis does not apply in this case. Idaho Code §§ 72-406 and 72-332 require apportionment when an industrial injury or occupational disease combines with a pre-

4

existing impairment to increase a claimant's permanent disability. If the claimant's resulting permanent disability is less than total, Section 72-406 provides that the employer is only liable "for the additional disability from the industrial injury or occupational disease." If the claimant's resulting permanent disability is total, Section 72-332 provides that the employer "shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease" and the ISIF is liable for the remainder of the claimant's income benefits. The Commission found that Claimant was totally and permanently disabled prior to her 2002 injuries. Her disability cannot be more than total. If she was totally and permanently disabled prior to her 2002 injuries, those injuries could not increase her permanent disability, and no additional disability could be apportioned to them. As we stated in *Hamilton v. Ted Beamis Logging & Construction*, 127 Idaho 221, 225, 899 P.2d 434, 438 (1995), "Here there is no question that the prior injury did not combine with the recent injury to create total and permanent disability, because there was already total disability before the second injury ever occurred." The Commission did not err in failing to engage in the two-step analysis required by *Horton* and *Page*.

**B. Is the Commission's Finding that Claimant Was Totally and Permanently Disabled Prior to Her 2002 Injuries Supported by Substantial, Competent Evidence?**

The Commission found that Claimant was totally and permanently disabled prior to her 2002 industrial injuries. Total and permanent disability may be proven either by showing that the claimant's permanent impairment together with nonmedical factors totals 100% or by showing that the claimant fits within the definition of an odd-lot worker. *Jarvis v. Rexburg Nursing Ctr.*, 136 Idaho 579, 583-84 38 P.3d 617, 621-22 (2001). The Commission found that Claimant fit within the definition of an odd-lot worker.

"The odd-lot category is for those workers who are so injured that they can perform no services other than those that are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist." *Jarvis*, 136 Idaho at 584, 38 P.3d at 622. "Such workers need not be physically unable to perform any work at all. They are simply not regularly employable in any well-known branch of the labor market absent a business boom, the sympathy of a particular employer or friends, temporary good luck, or a superhuman effort on their part."

5

*Gooby v. Lake Shore Management Co.*, 136 Idaho 79, 83, 29 P.3d 390, 394 (2001) (citations omitted).

"Whether a claimant is an odd-lot worker is a factual determination." *Bybee v. State, Industrial Special Indemnity Fund*, 129 Idaho 76, 82, 921 P.2d 1200, 1206 (1996). "The Commission's findings of fact will not be disturbed on appeal where they are supported by substantial and competent evidence." *Cox v. Hollow Leg Pub and Brewery*, 144 Idaho 154, 157, 158 P.3d 930, 933 (2007). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. The Court will not re-weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented." *Edwards v. Independence Services, Inc*., 140 Idaho 912, 914, 104 P.3d 954, 956 (2004) (citations omitted).

Claimant contends that the Commission's finding that she was totally and permanently disabled prior to her 2002 industrial accidents is not supported by substantial and competent evidence. The Commission found that "[t]here is no dispute that at the time of hearing, Claimant was totally and permanently disabled," and Claimant does not challenge that finding.

The Commission found that both prior to and after her 2002 injuries, Claimant was limited to sedentary work. Prior to her 2002 injuries, Claimant had significant work restrictions. In November 2001, Claimant's treating physician limited her to working one day per week for a maximum of twelve hours. As early as 1997, Claimant's treating physician told the Social Security Administration that Claimant had limited ability to walk, fatigued easily, had difficulty with prolonged use of her upper extremities, and had a twenty-pound lifting restriction. In 2000, the treating physician advised the Idaho disability determinations office that Claimant had problems with grip strength, could not perform repetitive or prolonged work with her upper extremities, was limited in her ability to both stand and walk, and could work as a medical assistant only on a limited basis and with accommodations. There were no additional substantive restrictions or limitations imposed upon Claimant following her 2002 injuries. The Claimant was also prescribed pain medications prior to and after her 2002 injuries. Her prescriptions before and after those injuries were identical in amounts, dosages, and frequency. The Commission concluded by stating:

> Fundamentally, Claimant's work limitations were the same both before and after her 2002 injuries. Even her own vocational expert could not identify any factors that substantively distinguish her condition before and after the 2002

accident. If Claimant was totally and permanently disabled at the time of hearing, then she was totally and permanently disabled before her 2002 accident.

On appeal, Claimant argues that her five previous jobs show she was not totally disabled prior to her 2002 injuries and that there is no evidence she had those jobs due to a business boom, the sympathy of a particular employer, temporary good luck, or a superhuman effort on her part. The Commission addressed that issue as follows:

> Despite the difficulties that her CMT and triple arthrodesis posed, Claimant was able to find some work in her field in the subsequent years because she wanted to work, was dogged in her efforts, had excellent skills to offer, had the good luck to find start-up medical practices or temporary fill-in work, and just possibly, because some employers were willing to make accommodations in order to have the benefit of her skills. Did that make them "sympathetic employers"? Possibly. But being a sympathetic employer does not mean that the employee is pathetic or in need of charity, merely that the employer is willing to make accommodations that are out of the ordinary in order to obtain an employee's beneficial services.
> Those who hired Claimant certainly got the benefit of their bargain. But, as evidenced by her employment history in the years leading up to her work for Employer, the services she could offer an employer were so limited that even the most well-disposed employers had few positions that were suitable. Claimant is the odd-lot worker personified.

The evidence shows that prior to her 2002 injuries, Claimant could perform no services other than those that are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist. The Commission's finding that Claimant was totally and permanently disabled prior to her 2002 injuries is supported by substantial and competent evidence.

The Claimant also argues that the Commission implicitly based its decision entirely on the fact that Claimant was receiving Social Security benefits. There is nothing in the Commission's opinion so indicating.

**C. Should This Court Overrule *Bybee v. State of Idaho, Industrial Special Indemnity Fund* and *Hamilton v. Ted Beamis Logging and Construction*?**

In *Carey v. Clearwater County Road Department*, 107 Idaho 109, 118, 686 P.2d 54, 63 (1984), this Court held, "[T]he appropriate solution to the problem of apportioning the non-medical disability factors, in an odd-lot case where the fund [ISIF] is involved, is to prorate the

7

non-medical portion of disability between the employer and the fund, in proportion to their respective percentages of responsibility for the physical impairment." The manner of apportioning the non-medical portion of disability in *Carey* became known as the "*Carey* formula." *Mapusaga v. Red Lion Riverside Inn*, 113 Idaho 842, 849, 748 P.2d 1372, 1379 (1987). In *Hamilton v. Ted Beamis Logging & Constr.*, 127 Idaho 221, 225, 899 P.2d 434, 438 (1995), we held that "the *Carey* formula is not applicable in this case because Hamilton was already totally and permanently disabled coming into the second injury; the total disability did not arise solely from the combined effects of both injuries." The following year we reaffirmed that holding. In *Bybee v. State of Idaho, Industrial Special Indemnity Fund*, 129 Idaho 76, 82, 921 P.2d 1200, 1206 (1996), we held:

> This case, like *Hamilton*, presents the question of whether liability can be apportioned via § 72-332(1) where there has been a finding that the claimant was totally permanently disabled prior to the occurrence of the industrial injuries. For precisely the same reason that the *Carey* formula was inapplicable in *Hamilton*, it is also inapplicable in this case; assuming the finding of odd-lot status is supported by the record, Bybee was already totally permanently disabled coming into the subsequent injuries.

Claimant asks us to modify *Hamilton* and *Bybee* by holding that an employer who knowingly hires a disabled worker cannot assert that the employee was already totally and permanently disabled under the odd-lot doctrine if that employee is subsequently injured in an industrial accident. The opinions in *Hamilton* and *Bybee* are based upon the wording of Idaho Code § 72-332(1), which states:

> If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the pre-existing impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled permanent disabilities, and the injured employee shall be compensated for the remainder of his income benefits out of the industrial special indemnity account.

The statute applies to an employee with a pre-existing, permanent physical impairment who incurs a subsequent disability by an industrial injury or occupational disease and who, by

reason of the combined effects[1] of both the pre-existing impairment and the subsequent injury or occupational disease, suffers total and permanent disability. When the statute applies, the employer is liable for compensation benefits "only for the disability caused by the injury or occupational disease" and the ISIF is liable "for the remainder of his income benefits."

For the employer to be liable, the employee must incur a "subsequent disability" by an industrial injury or occupational disease. "When the statute is read in context, the phrase 'subsequent disability' must refer to a disability caused by 'the subsequent injury or occupational disease,'" *Lopez v. State*, 136 Idaho 174, 179, 30 P.3d 952, 957 (2001), which in the present case would be Claimant's 2002 injuries. If Claimant was already totally and permanently disabled prior to those injuries, those injuries could not have caused a "subsequent disability" because her disability could not be greater than total. Thus, the employer is not liable for the payment of compensation benefits if the employee was already totally and permanently disabled prior to the subsequent injury or occupational disease arising out of and in the course of employment with that employer. *Hamilton v. Ted Beamis Logging & Constr.*, 127 Idaho 221, 225, 899 P.2d 434, 438 (1995).

For the ISIF to be liable, the "combined effects of both the pre-existing impairment and the subsequent injury or occupational disease" must render the employee totally and permanently disabled. If Claimant was already totally and permanently disabled prior to her 2002 injuries, those injuries could not have combined with her pre-existing impairment to cause her total disability. *Bybee v. State of Idaho, Industrial Special Indemnity Fund*, 129 Idaho 76, 82, 921 P.2d 1200, 1206 (1996).

Claimant has not offered any argument showing that this Court's interpretation of Idaho Code § 72-332(1) in *Hamilton* and *Bybee* is incorrect, nor has she offered any argument showing that the wording of the statute could be construed to create her proposed modification. If there are policy reasons supporting Claimant's proposed modification, the required change in the statute is the province of the legislature.

**D. Is Employer Entitled to an Award of Attorney Fees on Appeal?**

---

[1] The statute also applies when total and permanent disability is caused by the "aggravation and acceleration of the pre-existing impairment," but that is not what occurred in this case.

9

The Employer seeks an award of attorney fees pursuant to Idaho Appellate Rule 11.1. "In determining what sanction is appropriate under the rule, the Court has declared that a lack of legal or factual grounds for an appeal, alone, is generally not enough to support an award of attorney fees without a showing that the appeal was brought for an improper purpose." *Doe v. City of Elk River*, 144 Idaho 337, 339, 160 P.3d 1272, 1274 (2007). There is no indication that this appeal was brought for an improper purpose, and therefore, sanctions will not be imposed. *Frank v. Bunker Hill Co.*, 142 Idaho 126, 132, 124 P.3d 1002, 1008 (2005).

## IV.  CONCLUSION

We affirm the order of the Industrial Commission. We award the respondents court costs, but not attorney fees, on appeal.

Justices BURDICK, J. JONES, W. JONES and HORTON **CONCUR**.