141 P.3d 1062

Gary W. ANDERSON, Claimant–
Respondent,

v.

HARPER'S, INC., Employer, and Liberty
Northwest Insurance Corporation,
Surety, Defendants–Appellants.

No. 32135.

Supreme Court of Idaho,
Boise, May 2006 Term.

July 27, 2006.

Moffatt, Thomas, Barrett, Rock & Fields, Pocatello, for appellants. David Gardner argued.

Louis Garbrecht, Coeur d'Alene, for respondent.

EISMANN, Justice.

This is an appeal from a determination that the claimant is totally and permanently disabled and from an order awarding the claimant attorney fees. We affirm the order of the Industrial Commission.

## I. FACTS AND PROCEDURAL HISTORY

Gary Anderson (Claimant) began working for Harper's, Inc., in 1997. On January 29, 1998, he suffered an industrial accident which ultimately resulted in a cervical fusion at C5–6. On November 5, 1998, he again suffered an industrial accident when he crushed the end of his left thumb in a weld press. On February 21, 2002, he suffered a second neck injury while working, which resulted in a cervical fusion at C6–7. Following that surgery, tremors developed in his hands and arms which made it difficult for him to grasp and hold objects.

Claimant filed a separate workers' compensation complaint for each injury, and they were consolidated for hearing. The Industrial Commission (Commission) determined that Claimant was totally and permanently disabled under the odd-lot doctrine. Claimant's tremors were a significant factor in the disability determination, and whether they were related to the industrial accident was contested. The Commission also awarded Claimant attorney fees under Idaho Code § 72–804. Harper's, Inc., and its surety, Liberty North-

west Insurance Corporation, timely appealed. For convenience they will both be referred to as "Surety."

## II. ISSUES ON APPEAL

1. Is there substantial, competent evidence supporting the Commission's finding that Claimant's tremors were caused by his industrial accident?
2. Is there substantial, competent evidence supporting the Commission's finding that Claimant is totally and permanently disabled?
3. Is there substantial, competent evidence supporting the Commission's finding that Employer neglected or refused to pay compensation within a reasonable time after receipt of a written claim?
4. Is Claimant entitled to an award of attorney fees on appeal pursuant to Idaho Code § 72–804?

## III. ANALYSIS

When this Court reviews a decision of the Commission, it exercises free review over questions of law, but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Eacret v. Clearwater Forest Indus.*, 136 Idaho 733, 40 P.3d 91 (2002). Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. *Id.* Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous. *Id.* This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. *Id.* Whether a claimant has an impairment and the degree of permanent disability resulting from an industrial injury are questions of fact. *Id.*

A. **Is there Substantial, Competent Evidence Supporting the Commission's Finding that Claimant's Tremors Were Caused by His Industrial Accident?**

The primary issue litigated was whether Claimant's tremors were caused by

his industrial accident that occurred on February 21, 2002. The Commission found that they were. The Surety challenges that finding on appeal.

Claimant was treated by three physicians with respect to this injury. Claimant's primary physician was Dr. Gleason, an osteopath. He referred claimant to Dr. Bronson, an orthopedic surgeon, who performed the cervical fusion. The tremors developed after that surgery, and Dr. Bronson referred Claimant to Dr. Brondos, a neurologist, for evaluation of the tremors.[1] None of these physicians testified either in person or by deposition. Claimant relied upon reports in their medical records to provide medical evidence of causation.

 A claimant has the burden of proving to a reasonable degree of medical probability that his or her injury was caused by an industrial accident. *Gooby v. Lake Shore Mgmt. Co.*, 136 Idaho 79, 29 P.3d 390 (2001). The Commission may not decide causation without opinion evidence from a medical expert. *Jones v. Emmett Manor*, 134 Idaho 160, 997 P.2d 621 (2000). There is no absolute requirement, however, that the opinion evidence be presented by the expert testifying either at the hearing or by deposition. *Id.* A claimant can rely upon an opinion contained in a medical report to establish causation. *Id.*

In this case, the Commission found that Dr. Brondos expressed in a medical report his opinion that the tremors were caused by Claimant's cervical injury. Dr. Brondos first saw Claimant on October 31, 2002. He ordered an MRI "to rule out any intracranial process." The MRI was done, and the results were normal. Dr. Brondos told Claimant of the results on November 4, 2002, and then suggested trying to control the tremors with a medication.

Dr. Brondos again saw Claimant on December 20, 2002. In his report of that date, he stated, "The cause of the spasm is undetermined on the basis of history. I am recommending a repeat MRI of the cervical spine for further evaluation." The second MRI did not reveal any abnormalities that could explain the tremors. Dr. Brondos conducted further testing and tried another medication.

On July 3, 2003, Dr. Brondos again saw Claimant and consulted with Dr. Gleason, who was also regularly seeing Claimant. Testing done to that date had ruled out intracranial process, cord impingement, Parkinson's disease, and multiple sclerosis, and it had not disclosed any cause of the tremors. After consulting with Dr. Gleason, Dr. Brondos stated in his report, "The mechanism of the upper arm symptoms is still not clear but does appear to relate to problems in the back." The Commission found this statement as the necessary medical evidence of causation.[2]

 Surety first argues that Dr. Brondos's use of the words "not clear" shows that he was simply guessing at the cause of the tremors. "The proper standard for the admission of an opinion held by a medical expert is that the opinion is held to a 'reasonable degree of medical probability.'" *Gooby v. Lake Shore Mgmt. Co.*, 136 Idaho 79, 85, 29 P.3d 390, 396 (2001). "Whether or not the Commission can rely upon a medical opinion, however, does not depend upon the exact language used by the expert in expressing that opinion." *Id.* "Even though the medical expert does not use the words 'reasonable degree of medical probability,' the Commission can rely upon the expert's opinion if it is clear from the context that the expert was expressing an opinion based upon medical probability rather than merely upon medical possibility, speculation, or conjecture." *Id.*

---

1. The referral letter was addressed to Dr. Cooke, a neurologist who works with Dr. Brondos, but Dr. Cooke did not see Claimant.

2. The Commission also found that Dr. Gleason "ultimately attributed Claimant's tremor to his cervical injuries after reviewing all of Claimant's test results and following his progress for many months." The Commission relied upon Dr. Gleason's assessment in a chart note stating,

"History of C6–7 cervical fusion surgery with extremity pain/spasm." That note simply recites Claimant's history; it does not express an opinion as to whether the extremity pain/spasm was caused by the cervical fusion or the injury necessitating such fusion. Thus, the Commission's finding that Dr. Gleason attributed Claimant's tremor to his cervical injuries is clearly erroneous.

Taken in context, the Commission did not err in interpreting this statement as an expression of a medical probability rather than merely a medical possibility. The words "not clear" related to the exact mechanism of causation, not to the fact of causation.

 The Surety also points out that Dr. Brondos's statement refers to the "back," not the neck, as being the cause of the tremors. Considering the normal distribution of nerves from the spine, that the tremors began almost immediately after Claimant's cervical surgery, and that Dr. Brondos did not conduct an evaluation of the thoracic, lumbar, sacral, or coccyx areas of Claimant's spine, the Commission did not err in concluding that Dr. Brondos was referring to the cervical spine when he made this statement.

There were other facts supporting the Commission's finding of causation. Claimant testified that the tremors began "almost immediately right after surgery," while he was still in the hospital; that he experiences a burning sensation in his neck signaling the onset of the tremors; and that there was no evidence of any other cause of the tremors.

Surety argues that there was evidence that Claimant's tremors began years before the surgery. There was evidence that in 1998 Claimant had mild symptoms of carpal tunnel syndrome, but no medical expert opined that those symptoms were related to the tremors that began after Claimant's 2002 industrial accident.

 Surety also contends that the Commission erred in discounting the testimony of Dr. Clark, a neurologist hired by the Surety to provide expert testimony. Dr. Clark had conducted an independent medical examination of Claimant on June 30, 1998, in connection with Claimant's first cervical injury. Since then, he has not had any contact with Claimant. He testified that based upon his review of Dr. Brondos's records, he did not see anything that would relate Claimant's tremors to his second cervical spine injury. He also testified that he had never seen hand tremors caused by a cervical injury, but added it theoretically could happen. The Commission is free to determine the weight to be given to the testimony of a medical expert. *Lorca–Merono v. Yokes Washington Foods, Inc.*, 137 Idaho 446, 50 P.3d 461 (2002). We

will not disturb the Commission's conclusions as to the weight and credibility of expert testimony unless such conclusions are clearly erroneous. *Id.*

The Commission recognized that whether Claimant's tremors were caused by his industrial accident was "a difficult and close call." Although the evidence in the record does not overwhelmingly establish a definite causal link between Claimant's industrial accident and his subsequent tremors, we cannot find that the Commission's determination as to the weight to be given Dr. Clark's testimony and its finding regarding causation were clearly erroneous.

**B. Is there Substantial, Competent Evidence Supporting the Commission's Finding that Claimant Is Totally and Permanently Disabled?**

 " 'Evaluation (rating) of permanent disability' is an appraisal of the injured employee's present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by pertinent nonmedical factors [as] provided in section 72–430, Idaho Code." I.C. § 72–425. A determination by the Commission as to the degree of permanent disability resulting from an industrial injury is a factual question. *Gooby v. Lake Shore Mgmt. Co.*, 136 Idaho 79, 29 P.3d 390 (2001). That determination will not be disturbed on appeal when it is supported by substantial and competent evidence. *Id.* It is the province of the Commission to decide what weight should be given to the facts presented and what conclusions should be drawn from those facts. *Id.* We will sustain the Commission's finding as to the degree of permanent disability unless it is clearly erroneous. *Eacret v. Clearwater Forest Indus.*, 136 Idaho 733, 40 P.3d 91 (2002).

The Commission found that Claimant had a permanent partial impairment rating of 28%. That included an impairment rating of 1% from Claimant's 1998 thumb injury. Surety challenges the 1% rating for Claimant's thumb on the ground that it is not supported by medical testimony. We need not address that issue because it is irrelevant to the finding of total disability. Whether

Claimant's permanent impairment was 27% or 28% has no impact upon whether the pertinent nonmedical factors support a finding of total disability.

With respect to the finding of total disability, Surety first challenges various calculations made by the Commission. Claimant's vocational expert testified that Claimant's restriction to sedentary to light-duty work excluded Claimant from over 50% of the labor market, and that 90% of jobs required constant and frequent handling of objects and reaching. When discussing the issue of disability, the Commission added the 28% impairment rating, the 50% loss of access to the labor market, and an additional 45% loss of access due to the tremors (calculated by multiplying the remaining 50% of the labor market by 90%). Although these calculations are certainly questionable, we need not address them because the issue is whether the pertinent nonmedical factors in addition to the impairment rating support a finding of total disability.

Surety next contends that the testimony of Claimant's vocational expert does not support a finding of total disability. Because of his injuries, Claimant is restricted to sedentary work. The vocational expert defined sedentary work as follows:

[T]he definition of sedentary work with the Department of Labor or Dictionary of Occupational Titles is occasionally lifting ten pounds. Frequently it can be anywheres [sic] from two to five. Typically, people in sedentary work are in a sitting position. And there may be, you know, minimal standing and walking. And, typically, sedentary work you should have good use of the upper extremities to perform, you know, reaching, handling, fingering. Things of that nature.

On May 17, 2004, Claimant underwent a hand function assessment. The Commission described the results of that test as follows:

The conclusion was that Claimant had significant deficits in all areas tested. His right hand strength was 54% of normal and left hand was 69% of normal; he had a tremor in both hands that increased with fine motor activities; he had minimum deficits in writing, moderate deficits bilaterally in simulated eating, severe deficits bilaterally in stacking checkers and placing small items, and minimum deficits bilaterally in manipulating larger objects. On the Perdue pegboard manual dexterity tests, he performed at 65% of normal. The tester noted "the pegs were flying off the tabletop, due to his poor finger control." Claimant's Ex. 13, p. 3. The tester opined that Claimant's tremor was a major contributing factor to his testing deficits. She described Claimant as "motivated" and "cooperative," and felt that he had given maximum effort during the testing. *Id.* She observed that he wanted to return to work and was looking for guidance on what he was capable of doing.

In addition to the tremors, Claimant is in constant pain. That pain and the side effects of his medications interfere with his ability to focus. He obtained educational assistance from the Department of Veterans Affairs to seek a degree from a community college. That assistance was terminated when Claimant proved unable to complete the course work due to his pain and the side effects of his medications.

The vocational expert testified that unless the issues created by Claimant's tremors and pain are resolved, he would not be able to perform full-time, reasonable, continuous employment on a sustained basis. The expert also testified that the same factors prevented him from completing retraining. The substance of his opinions was as follows:

Based on my opinion right now unless some issues are dealt with in reference to his [Claimant's] pain and tremors, that it would be difficult for him to perform full-time, reasonable, continuous employment on a sustained basis. Now, I'm not to say that in the future there isn't some work that he can do if these other issues can be resolved or dealt with.

. . .

Q. Okay. So to summarize, you feel that the pain issue and the tremor issues are going to have to be dealt with before you would feel optimistic about a retraining program that would work?

A. Yeah, right now. If we take the tremors and the pain, you know, both from him and from the doctors, I think it would

be difficult for him to perform ongoing, full-time, sustained employability.

Q. And the same would be true with completing his retraining.

A. That's right.

The expert stated that if the tremors and pain issues were not resolved, Claimant's employer would have to make several accommodations. The employer would have to utilize voice-activated software for Claimant to perform any computer work. His work station would also have to be adjustable, and Claimant would have to be able to move around frequently. In addition, the employer could not expect Claimant to be at work five days a week. Claimant would have to be able to miss work whenever his pain flared up.

Surety argues that the expert's testimony showed that Claimant was employable if his tremors were under control, if he completed his education, if he received voice-activated computer software from the Washington Division of Vocational Rehabilitation, and if he was given accommodations by his employer. The problem with Surety's argument is that those "ifs" are not reality. As the Commission found, "Unquestionably, if Claimant's condition were to improve, whether through more effective and less debilitating medications, or otherwise, a different result might obtain. But this [Commission] found nothing in the record to suggest that such substantial and lasting improvement is to be expected." The Commission's finding that Claimant was totally and permanently disabled is not clearly erroneous.

**C. Is there Substantial, Competent Evidence Supporting the Commission's Finding that Employer Neglected or Refused to Pay Compensation within a Reasonable Time after Receipt of a Written Claim?**

The Commission awarded Claimant attorney fees under Idaho Code § 72–804. Attorney fees are awardable under that statute if the employer/surety: (a) contested a claim without a reasonable ground; (b) neglected or refused to pay the compensation within a reasonable time after receipt of a written claim; or (c) discontinued payment of compensation without reasonable grounds. *Lorca–Merono v. Yokes Washington Foods,*

*Inc.,* 137 Idaho 446, 50 P.3d 461 (2002). Whether or not grounds exist for awarding a claimant attorney fees under the statute is a factual determination that rests with the Industrial Commission. *Gooby v. Lake Shore Mgmt. Co.,* 136 Idaho 79, 29 P.3d 390 (2001). The Commission's decision regarding the awarding of attorney fees will be upheld if it is based upon substantial, competent evidence. *Id.*

The Commission awarded Claimant attorney fees "because of Surety's unreasonable denial of medical care and TTD [total temporary disability] benefits and unreasonable delay in paying for a portion of the medical care and all the TTDs." On appeal, Surety only challenges the finding that it unreasonably denied medical care and unreasonably delayed in paying for a portion of the medical care. It does not challenge the finding that it unreasonably denied and delayed paying TTD benefits.

Surety initially denied paying the medical expenses for Claimant's second cervical fusion on the ground that Claimant had changed physicians without following the procedures required by Idaho Code § 72–432(4)(a). As we stated in *Reese v. V–1 Oil Co.,* 141 Idaho 630, 635, 115 P.3d 721, 726 (2005), "The entitlement to income [TTD] benefits is not dependent upon the employee complying with Idaho Code § 72–432(4)(a)." Because there is no challenge to the award based upon Surety's unreasonable denial of and delay in paying TTD benefits, we affirm the decision of the Commission awarding Claimant attorney fees.

**D. Is Claimant Entitled to an Award of Attorney Fees on Appeal Pursuant to Idaho Code § 72–804?**

Claimant requests an award of attorney fees on appeal pursuant to Idaho Code § 72–804. That statute allows for an award of attorney fees on appeal if this Court determines that an appeal was brought without any reasonable basis. *Wutherich v. Terteling Co., Inc.,* 135 Idaho 593, 21 P.3d 915 (2001). There was a reasonable basis for Surety to challenge the adequacy of the medical evidence supporting the finding that Claimant's tremors were caused by the in-

dustrial accident. We therefore decline to award attorney fees on appeal.

## IV. CONCLUSION

We affirm the order of the Industrial Commission. We award respondent costs, but not attorney fees, on appeal.

Chief Justice SCHROEDER, and Justices TROUT, BURDICK and JONES concur.

