# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38076

GARY BROWN, )
)
    Claimant-Appellant, )       Twin Falls, November 2011 Term
)
v. )       2012 Opinion No. 49
)
THE HOME DEPOT, Employer, )       Filed: March 7, 2012
AMERICAN HOME ASSURANCE )
COMPANY, Surety, STATE OF IDAHO )       Stephen Kenyon, Clerk
INDUSTRIAL SPECIAL INDEMNITY )
FUND, )
)
    Defendants-Respondents. )

---

Appeal from the Industrial Commission of the State of Idaho.

The decision of the commission is <u>vacated</u> and the case is <u>remanded</u> for proceedings consistent with this opinion.

Ludwig Shoufler Miller Johnson, LLP, Boise, for appellant. Daniel A. Miller argued.

Bowen & Bailey, LLP, Boise, for respondents The Home Depot and American Home Assurance Company. William S. Wigle argued.

Mallea Law Offices, Meridian, for respondent State of Idaho, Industrial Special Indemnity Fund. Kenneth L. Mallea argued.

---

HORTON, Justice.

This appeal arises from a decision of the Industrial Commission (Commission). Gary Brown (Brown) filed a complaint with the Commission, seeking disability benefits after he injured his back while working for The Home Depot (Home Depot). Arguing that the injuries caused by the accident, in combination with his preexisting conditions, left him permanently and totally disabled, Brown sought workers' compensation benefits from both Home Depot and the Idaho Industrial Special Indemnity Fund (ISIF). The Commission determined that Brown was not permanently and totally disabled. Brown timely appealed.

1

Brown contends that the Commission erred by evaluating his ability to find work based upon his access to the local labor market at the time his medical condition stabilized in 2005. He argues that his labor market access should have been evaluated as of the date of the Commission hearing in 2009. Brown also argues that the Commission based its finding that he was 95 percent disabled on an incorrect understanding of the expert testimony of Douglas Crum (Crum), whose opinions the Commission apparently found to be persuasive. Brown argues that if the Commission had properly considered Crum's testimony, it would have found him to be 100 percent disabled. Alternatively, Brown argues that the Commission erred because the award of disability benefits was inconsistent with its apparent acceptance of Crum's opinions.

Brown asks this Court to remand this matter to the Commission with instructions to find him permanently and totally disabled as a matter of law or to reevaluate his disability rating in light of the proper labor market conditions. In the alternative, Brown asks that this matter be remanded with instructions to award greater disability benefits based upon Crum's opinion. We vacate the Commission's decision and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Brown began working part-time for Home Depot in 2001. While delivering a cabinet to a Home Depot customer in 2004, Brown slipped on snow-covered steps and injured his back. He received conservative treatment for the injury, but his condition worsened and he resigned from Home Depot in November, 2004. Brown underwent back surgery in early 2005 but had a difficult recovery and he was not found to be medically stable until December 8, 2005.

Brown filed a complaint with the Commission in 2007, seeking an award of total and permanent disability benefits. In 2008, Brown filed a complaint against ISIF, seeking an award of benefits for his preexisting impairments. The hearing on these claims was conducted on November 18, 2009.

Brown's surgeon rated Brown's permanent impairment at 12 percent as a result of the Home Depot industrial accident. Brown also had two preexisting injuries that resulted in permanent impairment ratings. First, Brown had two back surgeries in 2000, which resulted in a permanent impairment rating of 13 percent. Brown also had his left lung removed in 1982, which resulted in an impairment rating of 55 percent. Adding the new and preexisting ratings, the Commission found that Brown's overall permanent physical impairment was 80 percent.

Brown's ability to secure employment was hotly contested at the disability hearing.

2

Before going to work at Home Depot, Brown had a successful career as an engineer, managing large construction projects for Morrison-Knudsen. Brown retired in 1990, at age 43, believing that his investments would sustain him through retirement. However, in the aftermath of the stock market crash of 2000, Brown determined that he needed to return to work, at least on a part-time basis, and he went to work for Home Depot. Brown testified that he had wanted to resume his engineering career following his industrial accident. However, at the time of the hearing, he did not believe he was competent to work as an engineer. Brown also testified that he applied to work as a real estate agent, but was not hired by any of the firms he contacted.

The Commission received evidence from four vocational rehabilitation experts who had evaluated Brown's ability to secure employment. Brown's expert, Nancy Collins, (Collins), concluded that Brown was "unemployable," and testified that he was totally and permanently disabled under the odd-lot doctrine. Her conclusions were based on the labor market that existed at the time of the hearing in 2009. Home Depot's vocational expert, Crum, concluded that Brown was either 26 or 40 percent disabled, depending upon which medical restrictions the Commission determined were most appropriate. Crum also testified that his opinion was based on the 2009 labor market, but because the market in 2005 was better, his opinion would be the same for either market. ISIF's vocational expert, William Jordan, expressed his opinion that Brown was not totally disabled and testified that his report assessed Brown's employability at the time of the disability hearing in 2009. The Commission's rehabilitation consultant, Cindy Lijewski, believed that Brown was employable between December of 2005 and June of 2006.

After the hearing, the Referee issued his Findings of Fact, Conclusions of Law, and Recommendation which the Commission adopted in their entirety. Emphasizing that Brown's disability must be evaluated as of the time that he reached maximum medical improvement, rather than the time of hearing, the Commission concluded that Brown was not permanently and totally disabled and rated his disability at 95 percent. Taking into account Brown's preexisting conditions and benefits already paid, the Commission awarded him benefits for 27 percent permanent disability. Brown appealed the Commission's finding that he is not totally and permanently disabled. Neither party requests attorney fees on appeal.

## II. STANDARD OF REVIEW

When this Court reviews an Industrial Commission decision, it "exercises free review over questions of law . . . ." *Fowble v. Snoline Exp., Inc.*, 146 Idaho 70, 74, 190 P.3d 889, 893

(2008) (citing *Stolle v. Bennett,* 144 Idaho 44, 47-48, 156 P.3d 545, 548-49 (2007)). The interpretation of "a legislative act, such as the worker's compensation statutes, presents a pure question of law . . . ." *Daleiden v. Jefferson Cnty. Jt. Sch. Dist. No. 251*, 139 Idaho 466, 468, 80 P.3d 1067, 1069 (2003) (quoting *Crawford v. Dep't of Corr.,* 133 Idaho 633, 635, 991 P.2d 358, 360 (1999)).

### III. ANALYSIS

The central dispute in this appeal arises from two opinions of this Court regarding which labor market should be used when evaluating permanent disability. Relying on *Davaz v. Priest River Glass Co., Inc.*, 125 Idaho 333, 870 P.2d 1292 (1994), Brown contends that the Commission erred as a matter of law by holding that his labor market access must be determined as of the time he reached medical stability in 2005, rather than at the time of the Commission hearing in 2009. ISIF concurs with Brown on this pivotal question of law. Home Depot responds that our recent decision in *Stoddard v. Hagadone Corp.*, 147 Idaho 186, 207 P.3d 162 (2009) governs this issue and that the Commission properly focused on the labor market at the time Brown reached medical stability. We agree with Brown and ISIF and hold that the Commission should consider a claimant's labor market access as of the date of the hearing.

A workers' compensation claimant is permanently disabled when his "ability to engage in gainful activity is reduced or absent because of permanent impairment and no fundamental or marked change in the future can be reasonably expected." I.C. § 72-423. A permanent disability rating is "an appraisal of the injured employee's present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by pertinent nonmedical factors as provided in section 72-430, Idaho Code." I.C. § 72-425. A claimant may prove total and permanent disability "either by showing that the claimant's permanent impairment together with nonmedical factors totals 100% or by showing that the claimant fits within the definition of an odd-lot worker." *Funes v. Aardema Dairy*, 150 Idaho 7, 11, 244 P.3d 151, 155 (2010) (citing *Christensen v. S.L. Start & Assoc., Inc.,* 147 Idaho 289, 292, 207 P.3d 1020, 1023 (2009)).

Access to a labor market is central to either method of demonstrating that a claimant is totally and permanently disabled. Among the relevant non-medical factors the Commission must consider in determining a disability rating is "the diminished ability of the afflicted employee to compete in an open labor market within a reasonable geographical area considering all the

personal and economic circumstances of the employee . . . ." *Id.* (quoting I.C. § 72-430(1)). A claimant's status as an odd-lot worker may be established by showing that: "(1) he or she attempted other types of employment without success; (2) he or she, or vocational counselors or employment agencies on his or her behalf, . . . searched for other work and other work [was] not available; or (3) any efforts to find suitable employment would be futile." *Magee v. Thompson Creek Mining Co.*, 142 Idaho 761, 765, 133 P.3d 1226, 1230 (2006) (alteration in original, internal quotation marks removed) (quoting *Jarvis v. Rexburg Nursing Ctr.*, 136 Idaho 579, 584, 38 P.3d 617, 622 (2001)). Thus, the Commission must consider the claimant's access to the local labor market in order to determine whether a claimant is 100 percent disabled or whether the claimant is an odd-lot worker.

**A. The Commission erred in holding that a claimant's labor market access must be evaluated as of the date of maximum medical improvement.**

Brown and ISIF contend that the Commission should have considered Brown's access to the labor market at the time of the hearing in 2009. In *Davaz*, we held that "the time of the hearing is the crucial point at which a claimant's permanent disability is to be permanently settled." 125 Idaho at 337, 870 P.2d at 1296. However, Home Depot correctly observes that we recently stated that "[t]he proper date for disability analysis is the date that maximum medical improvement has been reached. I.C. § 72-422." *Stoddard*, 147 Idaho at 192, 207 P.3d at 168. The Commission relied upon this statement in *Stoddard* in reaching its conclusion.

At first blush *Davaz* and *Stoddard* appear to contradict each other. However, these decisions did not address the same issue. In *Davaz*, the claimant moved from Priest River, where he lived at the time of the injury, to Missoula, where he lived and worked at the time of hearing. *Davaz*, 125 Idaho at 335, 870 P.2d at 1294. Thus, the dispute in *Davaz* was whether the "reasonable geographic area" that the Commission was required to consider when applying I.C. § 72-430(1) centered around Priest River or Missoula. This Court held that "the market in which a claimant resides at the time of the hearing" is the market that determines the scope of the "reasonable geographic area." *Id.* at 338, 870 P.2d at 1297. The Court considered both the statutory language and the purpose of permanent disability awards, stating that when "the 'personal and economic circumstances of the employee' at the time of the hearing do not reflect a compensable need, then the spirit of the workers' compensation law would not be served by

awarding disability based upon an antecedent, but no longer existing, need." *Id.* at 337, 870 P.2d at 1296.

In contrast, *Stoddard* was not about labor markets at all. In that case, Stoddard sustained injuries in four accidents, three of which resulted from industrial accidents. *Stoddard*, 147 Idaho at 189, 207 P.3d at 165. After the first hearing, the Commission found that Stoddard was permanently and totally disabled under the odd-lot doctrine, and that the last accident caused Stoddard to suffer total and permanent disability. *Id.* The surety responsible for payments resulting from the final industrial accident then brought an action against ISIF seeking contribution for a proportionate share of disability benefits, which resulted in a second hearing. *Id.* At the second hearing, the Commission found that Stoddard was still permanently and totally disabled, and that ISIF was not liable because the disability was not the result of any combination of pre-existing impairment and the last industrial accident. *Id.* at 189-90, 207 P.3d at 165-66. On appeal, the surety argued that the Commission "erred by evaluating Stoddard's disability at the date of the second hearing" and "that the proper date for analysis is the date of the last industrial accident." *Id.* at 192, 207 P.3d at 168. We affirmed the Commission's decision, noting that Stoddard was found totally and permanently disabled at the first hearing and that the Commission's holding "merely stated that six years after the first hearing Stoddard was *still* permanently disabled." *Id.* (emphasis original). Our statement regarding "the proper date for disability analysis" cited to I.C. § 72-422, which defines permanent impairment, not permanent disability. *Id.* Our holding in *Stoddard* was not meant to contradict or overrule *Davaz*, but to emphasize, contrary to the surety's argument, that no disability determination could be made prior to the determination of permanent impairment, which cannot be evaluated until maximum medical improvement has been reached. *See* I.C. §§ 72-422, 424.

Under I.C. § 72-425, the permanent disability rating is a measure of the claimant's "present and probable future ability to engage in gainful activity." The word "present" implies that the Commission is to consider the claimant's ability to work as of the time evidence is received. There is no "present" opportunity for the Commission to make its determination apart from the time of hearing. As we stated in *Davaz*, it is the claimant's personal and economic circumstances at the time of the hearing, not at some earlier time, that are relevant to the disability determination. 125 Idaho at 337, 870 P.2d at 1296. Therefore, we hold that the relevant

6

labor market for evaluating the non-medical factors under I.C. § 72-430 and in determining a claimant's odd-lot worker status is the labor market at the time of the hearing.

We recognize that this holding, if not qualified, may create an incentive for litigants to seek to expedite or delay the hearing in order to take advantage of changing economic conditions. In *Davaz*, we did note an exception to the general rule that should eliminate this incentive:

> Granted, there may be instances where a market other than the claimant's residence at the time of the hearing is relevant to the I.C. § 72-430(1) inquiry, and such determinations should be made on a case by case basis based on individual facts and circumstances. *See e.g. Lyons v. Industrial Special Indem. Fund,* 98 Idaho 403, 565 P.2d 1360 (1977) (court allowed evidence from market vacated by claimant after injury as well as market of residence at the time of the hearing).

*Davaz*, 125 Idaho at 337, 870 P.2d at 1296. In *Lyons*, this Court stated: "After his last injury, appellant moved from Orofino, Idaho, to New Meadows, Idaho. A claimant should not be permitted to achieve permanent disability by changing his place of residence. Therefore, in meeting its burden the Fund can introduce evidence of an actual job within either community." *Lyons*, 98 Idaho at 407 n.3, 565 P.2d at 1364 n.3.

Thus, in an instance where the Commission perceives that a party has taken an action that has the effect of manipulating the outcome of a disability determination, the Commission possesses the authority to disregard the effect of that action. In the present context, if the Commission determines that a party has delayed the hearing, resulting in an advantage to that party because of a change in the labor market, the Commission may consider the applicable labor market at the time the hearing would have taken place.[1] We do not view this exception to be applicable to the present case, as there is no suggestion that any party delayed the hearing in order to secure such an advantage.

In this case, Brown attempted to establish both lack of access to his local labor market and his status as an odd-lot worker with evidence from Collins, his vocational expert. Collins stated that Brown was not competitive in the labor market and that his job search would have

---

[1] We do not intend to suggest that an injured worker is automatically qualified for odd-lot status solely due to a lack of employment opportunities in the applicable labor market due to temporary economic conditions at the time of hearing. Nor do we suggest that a worker may be disqualified from odd-lot status due to a labor market that is unusually favorable to prospective employees at the time of hearing. Rather, there are ebbs and flows in broad economic conditions which may affect local labor markets. Given the humane objectives underlying our workers' compensation scheme, the Commission may disregard the effects of temporary fluctuations in the applicable labor market resulting from changing economic conditions when determining whether the employee's personal circumstances demonstrate a compensable need.

been futile. Relying on *Stoddard*, the Commission stated that Brown's disability "must be evaluated at the time he reached maximum medical improvement" in 2005, "and not at the time of the hearing." The Commission then determined that Brown was not permanently and totally disabled, finding that his physical impairment plus the non-medical factors did not exceed 100 percent and that he did not qualify as an odd-lot worker. In making both findings, the Commission expressly discounted Collins's opinion as "not persuasive" because it was based on her evaluation of Brown's employability at the time of the hearing rather than at the time of medical stability. As the Commission's determination of Brown's disability rating was predicated upon its application of an incorrect legal standard, we vacate the decision of the Industrial Commission and remand for additional proceedings consistent with this opinion.

**B. We do not address the remainder of the issues on appeal.**

Brown asks this Court to remand to the Commission with instructions to find that he was 100 percent disabled or, alternatively, with instructions to award him increased permanent disability benefits based upon his claim that the Commission accepted, but misunderstood, Crum's opinions. In view of the commandment of Art. V, § 9 of the Idaho Constitution that our review "shall be limited to a review of questions of law," we decline to intrude upon the Commission's role as finder of fact.[2] Because we vacate and remand in order for the Commission to reconsider its decision based upon the labor market at the time of hearing, the Commission will have the opportunity to consider all evidence previously presented and clarify the bases of its decision.

## IV. CONCLUSION

We hold that the claimant's labor market at the time of the disability hearing is the proper labor market to be used in evaluating the claimant's disability. Because the Commission applied the incorrect legal standard, we vacate the Commission's decision and remand for further proceedings. Costs to Brown.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.

---

[2] Despite our unwillingness to intrude upon the fact-finding role of the Commission, we note our difficulty in understanding how the Commission arrived at its conclusion as to the percentage of permanent disability based upon its apparent acceptance of Crum's testimony.