# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 45700

GEORGE MCGIVNEY, )
)
      Claimant-Respondent, )
)
v. )
)
AEROCET, INC., Employer, and STATE )
INSURANCE FUND, Surety, )
)
      Defendants-Appellants, )
)
and )
)
QUEST AIRCRAFT, Employer, and )
FEDERAL INSURANCE COMPANY, )
Surety, )
)
      Defendants-Respondents. )

Moscow, April 2019 Term

Filed: June 13, 2019

Karel A. Lehrman, Clerk

---

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Industrial Commission is <u>affirmed</u> and the case is <u>remanded</u>.

H. James Magnuson, Coeur d'Alene, for Appellants, Aerocet, Inc., and State Insurance Fund. H. James Magnuson argued.

Bowen & Bailey, LLP, Boise, for Respondents, Quest Aircraft and Federal Insurance Company. William S. Wigle argued.

Kelso Law Office, Coeur d'Alene, for Respondent, George McGivney. Starr Kelso argued.

---

STEGNER, Justice.

This case involves an appeal brought by Aerocet, Inc., (Aerocet) and its surety, the State Insurance Fund, in which they appeal a decision of the Idaho Industrial Commission (Commission) involving two worker's compensation claims brought by George McGivney (McGivney). The Commission awarded McGivney benefits for injuries he sustained to his left knee while working for both Aerocet and Quest Aircraft (Quest). The Referee consolidated the two cases and issued a recommendation that attributed the vast majority of liability to Quest. The

1

Commission rejected the bulk of the Referee's recommendations and apportioned liability equally between Aerocet and Quest. Aerocet appeals alleging the Commission inappropriately consolidated McGivney's two injury claims. Aerocet also contends the Commission failed to determine McGivney's disability in excess of impairment from his 2011 accident at Aerocet prior to his 2014 accident at Quest, and that the Commission erred in its application of *Brown v. Home Depot*, 152 Idaho 605, 272 P.3d 577 (2012). Aerocet also maintains the Commission's decision is not supported by substantial and competent evidence. For the reasons stated, we affirm the Commission's decisions. We also deny the requests for attorney fees. We remand the case to the Commission to enable it to calculate the amount due Quest's surety from Aerocet's surety for any amounts overpaid by Quest's surety.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 6, 2011, McGivney injured his left knee at work while working for Aerocet. Part of McGivney's job duties at the time included ascending and descending fifteen to sixteen steep wooden stairs thirty to forty times a day. On one of those trips down the stairs, McGivney felt something "go" in his left knee. Although he did not fall, he reported that he was "kind of" able to walk it off, but his knee kept "catching and locking" and it was "really painful."

Some two months later, McGivney sought treatment from Dr. Douglas P. McInnis, an orthopedic surgeon. Dr. McInnis identified a tear in the meniscus of McGivney's left knee. He also discovered the presence of progressive arthritis, which pre-existed McGivney's accident. In order to address McGivney's injury, Dr. McInnis offered McGivney two options: Dr. McInnis could either surgically repair the torn meniscus through arthroscopic surgery, which would ease the symptoms; or he could partially replace portions of the knee, which would address the accident symptoms *and* the pre-existing arthritis. McGivney opted for the former, less invasive surgery. Dr. McInnis performed the meniscus repair on September 12, 2011. Dr. McInnis concluded following surgery that McGivney had sustained a 2% lower extremity impairment. McGivney returned to work at Aerocet with the following restrictions—that he not use stairs and that if an activity hurt his knee, he should discontinue doing it.

Shortly after returning to work at Aerocet, McGivney accepted a position at Quest, a "sister company" to Aerocet. McGivney began working for Quest in October 2011.

Roughly two-and-a-half years later, on March 4, 2014, while working at Quest, McGivney reinjured his left knee. After leaving a meeting, McGivney was again descending

2

stairs—this time holding and looking at some papers from the meeting—when he skipped or "overstepped" a step and landed hard on his left leg, which "jarred everything." Initially, McGivney did not give much thought to the event, however, on his way home from work that day, his knee "really started hurting" and by the time he got home it "had swollen up to a pretty good size." Following the second accident, McGivney was seen by Dr. Jeffrey Lyman, also an orthopedic surgeon. Dr. Lyman performed a unicompartmental arthroplasty (partial knee replacement) on McGivney's left knee to address the problems identified. Quest initially declined to pay for McGivney's surgery. As a result, McGivney's private health insurer paid for the surgery. Following the partial knee replacement surgery, McGivney tried to return to work for Quest, but due to an adverse reaction to pain medication and a stressful work environment, he was unable to continue and eventually resigned from his job with Quest.

On July 28, 2014, McGivney filed a *pro se* worker's compensation complaint seeking worker's compensation benefits from Quest and its surety, Federal Insurance Company. On November 21, 2014, McGivney, who was by now represented by counsel, filed an additional worker's compensation complaint against Aerocet and its surety. On April 29, 2015, McGivney moved to consolidate both cases before the Commission because they involved "intertwining facts," records, and testimony. On May 12, 2015, counsel for both Aerocet and Quest took McGivney's deposition. Some time that day, Aerocet filed an objection to the consolidation of McGivney's claims. On May 19, 2015, the Referee presiding over the case denied Aerocet's objection and ordered the cases consolidated because consolidation "could result in judicial economy." However, the Referee left open the possibility of separating the two claims at a future date when he wrote, "[a]s the matter unfolds, counsel for [Aerocet and the] State Insurance Fund may renew his objection if warranted." Counsel for Aerocet never renewed his objection to consolidation, in spite of the Referee's specific invitation to do so if an objection were warranted.

On September 11, 2015, McGivney moved to compel Quest and its surety to pay his past due temporary disability and medical benefits. On September 28, 2015, the Commission granted McGivney's motion. The claims went to hearing before the Referee on November 8, 2016. On October 12, 2017, the Referee issued his Findings of Fact, Conclusions of Law, and Recommendation. The Referee determined, in reliance on *Brown v. Home Depot*, 152 Idaho 605, 272 P.3d 577 (2012), that a claimant's disability is appropriately determined at the date of

3

hearing rather than the date of medical stability. The Referee also concluded that 1) McGivney's condition was not due to a pre-existing condition unrelated to work; 2) McGivney was entitled to a 21% lower extremity permanent partial impairment ("PPI") rating as a result of his 2014 incident; 3) McGivney was entitled to a permanent partial disability ("PPD") rating of 40% inclusive of his 21% PPI; 4) apportionment of benefits paid or payable by Quest between Quest and Aerocet was not appropriate; and 5) McGivney was not entitled to an award of attorney fees against Quest.

The Commission reviewed the Referee's Findings of Fact, Conclusions of Law, and Recommendation. On December 22, 2017, it issued its own Findings of Fact, Conclusions of Law, and Order in which it declined to adopt many of the Referee's recommendations. The Commission also relied on *Brown* to determine that McGivney's disability should be determined as of the date of the hearing. The Commission also agreed with the Referee that McGivney's condition was not due to a pre-existing condition, and that McGivney was not entitled to an award of attorney fees from Quest. However, the Commission concluded that McGivney suffered a greater degree of permanent partial disability than the Referee recommended. Due to his injury-related work restrictions, his age, his lack of formal education, and his spotty work history since 2014, the Commission concluded that McGivney suffered a 50% permanent partial disability, inclusive of his 21% permanent partial impairment.

The Commission also disagreed with the Referee's conclusion that apportionment between Aerocet and Quest was inappropriate. The Commission concluded that responsibility for the medical expenses incurred for McGivney's left knee arthroplasty (partial knee replacement) and the related treatment should be apportioned *equally* between Aerocet and Quest from June 25, 2014, forward. The Commission also concluded that responsibility for any total temporary disability benefits payable to McGivney should be apportioned equally between Aerocet and Quest from June 25, 2014, forward. (Quest was liable for any total temporary disability benefits from the time of the 2014 injury until June 24, 2014, the day before McGivney's surgery.) To the extent that Quest had overpaid time loss benefits to McGivney, Quest was entitled to reimbursement from Aerocet. Aerocet and its surety, the State Insurance Fund, timely appealed the Commission's decision. (Hereafter, for ease of reference, Aerocet and its surety, the State Insurance Fund, will be collectively referred to as "Aerocet." In addition, Quest and its surety, Federal Insurance Company, will be referred to as "Quest.")

4

## II. STANDARD OF REVIEW

"When this Court reviews a decision of the Industrial Commission, it exercises free review over questions of law, but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings." *Bradford v. Roche Moving & Storage, Inc.*, 147 Idaho 733, 736, 215 P.3d 453, 456 (2009) (quoting *Eacret v. Clearwater Forest Indus.*, 136 Idaho 733, 735, 40 P.3d 91, 93 (2002)). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Id.* "Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous." *Id.* "This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented." *Id.* "Whether a claimant has an impairment and the degree of permanent disability resulting from an industrial injury are questions of fact." *Id.*

## III. ANALYSIS

### A. The Referee did not abuse his discretion in consolidating McGivney's two cases.

Aerocet argues that the Commission erred by implicitly accepting the Referee's consolidation of the two cases. Aerocet contends that the Commission should have determined McGivney's impairment from the 2011 injury separately from the 2014 injury. Specifically, Aerocet argued that it was "entitled to a separate determination of Claimant's disability in excess of impairment, if any, from the 2011 injury to the same extent as if the 2011 claim was not consolidated," and that the failure of the Commission to conduct a separate disability determination relative to the 2011 injury violated its substantive rights.

McGivney responds contending Aerocet's argument is a complaint about the Referee's order to consolidate the cases and argues that Aerocet did not preserve its objection to consolidation for review on appeal. McGivney also contends that even if the Commission had conducted a hearing for each accident (rather than relying on the transcript from the consolidated proceeding), the apportionment analysis and result would have been the same. Quest argues that the cases were appropriately consolidated because of intertwining facts, and that Aerocet has not presented any argument that the testimony or evidence would have differed had two hearings been conducted.

This case arose as a result of McGivney filing a *pro se* complaint with the Commission against Quest in July 2014. In that complaint, he sought medical benefits and lost wages

5

associated with the March 2014 accident at Quest. McGivney identified the issue involved as the "insurance company [for Quest] had denied [his] claim." McGivney had never filed a complaint regarding his 2011 injury at Aerocet. It was only after McGivney retained counsel that he filed a complaint against Aerocet. The complaint against Aerocet was filed in November 2014.

Once both complaints were filed, McGivney moved to consolidate the cases. The Referee granted McGivney's motion. Following the consolidated hearing, the Referee found that McGivney suffered a 2% left lower extremity impairment as a result of the 2011 accident, and a 21% lower extremity impairment as a result of the 2014 accident. The Referee also determined that "when considering those factors enumerated in Idaho Code 72-430" McGivney had incurred permanent partial disability "as a result *solely* of his 2014 accident/injury of 40% inclusive of the medical factor of his PPI [permanent partial impairment] of 21% lower extremity." (Italics added.) The Commission, however, rejected the Referee's recommendations. The Commission concluded that McGivney had suffered a 50% permanent partial disability of the whole person, which included his 21% permanent partial impairment based on all the factors enumerated in Idaho Code section 72-430, primarily because of "the combination of [McGivney's] work restrictions and lack of formal education." The Commission also apportioned liability for its award *equally* between Aerocet and Quest. (The Referee had rejected any apportionment.)

Aerocet takes issue with the Commission's failure to separately determine disability for the 2011 accident. It argues that, had the proceedings not been consolidated, a separate disability determination for the 2011 injury would have been required, so consolidation necessarily altered its substantive rights, in violation of the law. For this proposition, it cites *Jones v. Jones*, 117 Idaho 621, 624, 790 P.2d 914, 917 (1990) (quoting *Johnson v. Manhattan Ry.*, 289 U.S. 479, 496–98 (1933)). In *Jones*, this Court stated:

> In general, the consolidation of two cases does not have the effect of merging two cases into a single action. Rather, "consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties."

There is no specific guidance regarding consolidation, either in Title 72 of the Idaho Code, the section of the Idaho Code dealing with worker's compensation benefits, or in the case law from this Court. Permanent impairment is to be determined when the claimant has reached maximum medical improvement as indicated in Idaho Code section 72-422. Permanent disability is to be determined after both maximum medical improvement has been achieved and permanent

6

impairment has been determined as set out in Idaho Code sections 72-423 and 72-425. In addition, *Brown* strongly suggests that determining disability is most appropriate at the time of the hearing. *Brown*, 152 Idaho at 609, 272 P.3d at 581. However, no authority specifically addresses whether there must be a separate disability determination for each injury in the hearing if the cases are consolidated, as Aerocet asserts.

Case law does not support Aerocet's claim that the Commission is somehow required to separately determine disability without regard to a subsequent injury when cases have been consolidated. For example, in *Smith v. J.B. Parson Co.*, 127 Idaho 937, 939–40, 908 P.2d 1244, 1246–47 (1996), the claimant suffered two work-related industrial accidents while working for two different employers—a partial finger amputation while seasonably employed by Parson and a back injury while employed by the Idaho State School and Hospital. When the claimant filed multiple claims with the Commission (including one for a non-work-related condition), the claims were consolidated. *Id.* The Commission evaluated the various impairments separately, assigning them different impairment percentages, but "considered all four of Smith's impairments, combined with Smith's age and education, and determined that Smith was totally and permanently disabled . . . [on] the date of medical stability." *Id.* at 940, 908 P.2d at 1247.

In *Stoddard v. Hagadone Corp.*, 147 Idaho 186, 189, 207 P.3d 162, 165 (2009), the claimant suffered three industrial accidents while employed by the Hagadone Corporation, and filed three separate claims for benefits, which were consolidated by the Commission. Stoddard's three work-related injuries involved: 1) a groin strain and hernia suffered while unloading flats of potted flowers from a boat; 2) back pain caused by maneuvering a large flowerpot through a sliding glass door; and 3) a fall while mowing the lawn on an incline. *Id.* The Referee ultimately found Stoddard to be totally and permanently disabled on the basis of these injuries and apportioned responsibility for Stoddard's impairments between Hagadone Corporation's various sureties which had insured Hagadone at different times during his employment. *Id.* The Referee further concluded, however, that the last injury caused Stoddard to be totally and permanently disabled and therefore found the second surety "fully liable for the total and permanent disability benefits." *Id.* The first surety was held responsible for 20% of the injuries as a result of the hernia and the second surety was held liable for the permanent total disability or 80% of Stoddard's disability. *Id.* Although there was discussion of the various injuries in terms of percentages of impairment, causation and apportionment, there was not a separate disability determination for

7

each injury in the consolidated cases. Each injury was part of a single disability determination—even though the Commission ultimately concluded that one injury was the sole cause of Stoddard's total permanent disability.

In *Anderson v. Harpers, Inc.*, 143 Idaho 193, 141 P.3d 1062 (2006), the Commission consolidated the complaints of a claimant who was involved in three industrial accidents while working for a single employer: two involving spinal injuries and one involving injury to his left thumb. *Id.* at 195, 141 P.3d at 1064. The Commission concluded that, as a result of these injuries, the claimant had an impairment rating of 28%, which included 1% for the thumb injury. *Id.* at 197–98, 141 P.3d at 1066–67. The Commission then concluded that this impairment rating, when considered together with the pertinent nonmedical factors, supported a finding of total permanent disability. *Id.* at 198, 141 P.3d at 1067. Again, the Commission considered the injuries separately to determine impairment percentages, but did not determine disability arising from the various injuries separately. They were joined together for the disability determination.

Review of the cases above indicates that for consolidated cases, the disability determination has historically been conducted using a test resembling a totality of the circumstances analysis. Cases are typically consolidated when they involve a single claimant with multiple injuries, in which consolidation can avoid duplicative proceedings, testimony, and exhibits. Additionally, in these cases, the Commission was careful to separate out each injury and identify the cause of each injury, the percentage of impairment attributable to each injury, and to apportion liability accordingly. Disability determinations are more holistic in nature than individual impairment determinations because they analyze the ability of a claimant to engage in "gainful activity" as required by Idaho Code section 74-423, and because they consider the nonmedical factors outlined in Idaho Code section 72-430 in addition to the claimant's medical condition.

Also, there is no clear legal authority requiring the Commission to conduct a separate disability determination for each injury in a consolidated case. As is frequently stated, the standard of review for this Court over decisions by the Commission is "free review over questions of law," but review of factual questions only to determine "whether substantial and competent evidence supports the Commission's findings." *Anderson*, 143 Idaho at 195, 141 P.3d at 1064. This Court has held that the Commission's decision to order (or deny) consolidation is

8

discretionary.[1] *Hipwell v. Challenger Pallet & Supply*, 124 Idaho 294, 300, 859 P.2d 330, 336 (1993) ("[I]t is within the Commission's discretion to order consolidation, and our review of the record reveals no abuse thereof."). Thus, the Referee's decision to consolidate the cases is reviewable under an abuse of discretion standard. When this Court reviews an alleged abuse of discretion by a hearing officer the sequence of inquiry requires consideration of *four* essentials. Whether the hearing officer: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of [his] discretion; (3) acted consistently with the legal standards applicable to the specific choices available to [him]; and (4) reached [his] decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

Given the abuse of discretion standard of review, we conclude the Referee did not abuse his discretion in consolidating McGivney's two cases because consolidation was appropriate given the factual circumstances. Here, McGivney injured the same knee (left) in the same way (torn meniscus) doing the same type of activity (descending stairs), while working for two different employers roughly two-and-a-half years apart. The Referee, when granting McGivney's motion to consolidate, indicated that consolidation "could result in judicial economy" and that Aerocet's surety, the State Insurance Fund, could renew its objection "if warranted." While given the opportunity to revisit the Order to Consolidate, no motion to reconsider the decision was ever made. As a result, Aerocet cannot demonstrate that the Referee abused his discretion in granting McGivney's motion to consolidate.

**B. The Commission did not err by declining to separately determine McGivney's disability in excess of impairment prior to the 2014 injury.**

Aerocet's next assignment of error is that the Commission erred because it did not determine McGivney's disability in excess of impairment at the time he reached maximum medical improvement following his 2011 injury. This issue is to a large extent a repeat of Aerocet's first issue. McGivney did not file a complaint with the Commission for his 2011 injury at Aerocet until 2014—this occurred *after* he had filed a complaint for his 2014 injury at Quest. Disability is determined by the Commission after it receives a complaint. Aerocet asserts that

---

[1] McGivney contends Aerocet failed to preserve this issue arguing that the Referee's consolidation of the cases was an interlocutory order not specifically adopted by the Commission, and therefore not appealable. However, the Commission declined to adopt the bulk of the Referee's recommendations. Instead, it authored its own decision. While the Commission did not explicitly address consolidation, it seems clear that the Commission implicitly approved consolidation of the cases. *See* I.C. § 72-506. Therefore, the consolidation of McGivney's two cases is properly before this Court as an order of the Commission.

McGivney reached maximum medical improvement at the time he was given a 2% impairment rating by Dr. McInnis and released back to work with minimal restrictions. Because McGivney's 2011 claim was still open when he was reinjured in 2014, there was no impediment to the Commission considering both claims at the same time. Aerocet's claim to the contrary is without merit.

**C.    The Commission did not err in its application of *Brown v. Home Depot*.**

Aerocet next argues that the Commission erred in its application of *Brown v. Home Depot*, 152 Idaho 605, 272 P.3d 577 (2012). Aerocet contends the Commission erred when it read *Brown* for the proposition that a claimant's disability is to be determined at the date of the hearing rather than the date of medical stability. Aerocet argues that *Brown* was limited to determining the proper labor market that should be used to assess odd-lot disability, and that the Commission read *Brown* too broadly in this case. Aerocet points to this Court's statement in *Stoddard v. Hagadone Corp.*, 147 Idaho 186, 192, 207 P.3d 162, 168 (2009), for its contention that "the proper date for disability analysis is the date that maximum medical improvement has been reached." Aerocet maintains that the disability determination for the 2011 injury should have been conducted when that injury was "ripe"—or when Dr. McInnis gave McGivney a 2% impairment rating and released him to work without restrictions. Soon after his return to work, he secured a position with another company (Quest). Given these facts, Aerocet argues that McGivney did not suffer *any* disability in excess of impairment from the 2011 injury, which it argues is what the Commission would have concluded had the disability determination been conducted before the 2014 injury.

While it is true that the burden of proving disability in excess of impairment is on the claimant,[2] the Commission did not err in applying *Brown* in the way that it did. This Court explained in *Brown* that:

> Under I.C. § 72-425, the permanent disability rating is a measure of the claimant's "present and probable future ability to engage in gainful activity." The word "present" implies that the Commission is to consider the claimant's ability to work as of the time evidence is received. There is no "present" opportunity for the Commission to make its determination apart from the time of hearing.

---

[2] *McCabe v. JoAnn Stores, Inc.*, 145 Idaho 91, 98, 175 P.3d 780, 786 (2007) ("The burden of proving disability in excess of impairment rests with the claimant, not the Commission.").

*Brown*, 152 Idaho at 609, 272 P.3d at 581. As indicated above, this Court in *Brown* also clarified any confusion between its holding with its prior statement in *Stoddard*:

> Our statement regarding "the proper date for disability analysis" [from *Stoddard*] cited to I.C. § 72-422, which defines permanent impairment, not permanent disability. *Id.* Our holding in *Stoddard* was not meant to contradict or overrule *Davaz*, but to emphasize [ ] that no disability determination could be made prior to the determination of permanent impairment, which cannot be evaluated until maximum medical improvement has been reached.

*Id.* Since it was decided, *Brown* has not been overruled, or otherwise narrowed by this Court. Accordingly, it is still good law, and the Commission did not err in relying on it to determine McGivney's disability in excess of impairment at the time of the hearing, rather than at some earlier time. Aerocet's argument to the contrary is rejected.

**D.      Substantial and competent evidence supported the Commission's apportionment of McGivney's disability benefits between Aerocet and Quest.**

Aerocet next argues that McGivney did not suffer a worsening of his knee condition over time, but that he suffered a new, separate accident and resulting injury while employed at Quest, which resulted in the need for new medical treatment and the partial knee replacement. Aerocet thus maintains that the Commission erred when it concluded that Quest should be reimbursed by Aerocet for 50% of McGivney's permanent disability benefits, as well as medical and time loss benefits arising after June 25, 2014.

"There is a presumption that the Commission by its experience is able to judge the causative factors in a particular case, and the Commission is 'allowed a degree of latitude in making an apportionment.'" *Page v. McCain Foods, Inc.*, 145 Idaho 302, 308–09, 179 P.3d 265, 271–72 (2008). "This Court will not overturn an apportionment when it is supported by substantial and competent, although conflicting, evidence." *Id.* at 309, 179 P.3d at 272. "When the Commission apportions permanent disability so as to absolve the employer for compensating for preexisting injuries, the Commission must explain its apportionment determination with sufficient rationale to enable this Court to determine whether it is supported by substantial and competent evidence." *Id.*

Here, the Commission provided an elaborate explanation for its apportionment to Aerocet of half of the disability benefits, and for half of the medical and time loss benefits after June 25, 2014 (the date of the surgery). Part of its rationale is included below:

11

70. Claimant has been given a 21% lower extremity impairment rating for his left knee. Dr. McInnis originally proposed that following the 2011 meniscectomy, Claimant was entitled to a 2% lower extremity rating, with no impairment assigned to Claimant's pre-existing left knee arthritis. Dr. McNulty acknowledged that this 2% rating was appropriate at the time it was issued. However, Dr. McNulty ultimately concluded that half of Claimant's current 21% lower extremity rating should be apportioned to the 2011 accident. Explaining his reasoning, he testified that the 2011 meniscectomy destabilized Claimant's left knee, and caused the progression of arthritic changes in the medial compartment of the knee much faster than would have otherwise happened. . . . At the same time, Dr. McNulty and Dr. Lyman proposed that the 2014 accident caused additional trauma to the medial compartment; and had further hastened Claimant's need for the uni-compartmental knee arthroplasty [partial knee replacement surgery]. Based on these findings, Dr. McNulty believes it appropriate to apportion Claimant's impairment on a 50-50 basis as between the accident of 2011 and the accident of 2014, with no apportionment to whatever mild degenerative changes Claimant may have had in the left knee prior to the 2011 accident. Dr. Lyman, the surgeon who performed Claimant's left knee arthroplasty, concurs with this analysis. While we recognize that following the 2011 accident Claimant was given only a 2% lower extremity rating and released without limitations/restrictions, the important point is that Claimant's left knee condition continued to deteriorate following the date of Dr. McInnis's rating, and that this deterioration has been persuasively linked to the 2011 accident.

The Commission thereafter ordered that disability, medical, and time loss benefits be apportioned equally between Aerocet and Quest:

71. As to the issue of whether Claimant's disability should be apportioned between the 2011 and 2014 accidents, we conclude that the medical evidence referenced above supports a similar apportionment of disability over and above impairment. The principal reason for performing the left knee arthroplasty was to address the profound medial compartment damage noted in 2014. As both Dr. McNulty and Dr. Lyman have indicated, Claimant's medial knee arthritis was the product of both the 2011 and the 2014 accidents. While Claimant may have been able to return to his time-of-injury job following the 2011 accident this fact does not denigrate our conclusion that Claimant's current disability is referable to significant medial compartment arthritis caused by both the 2011 and 2014 accidents.

The Commission's explanation supplies ample rationale for its decision. It relied directly on the medical opinions of two physicians who examined McGivney—Dr. McNulty, who performed an independent medical examination at the request of Quest, and Dr. Lyman, who treated McGivney and performed his partial knee replacement surgery. In addition, although there was conflicting evidence, the Commission fully explained its decision and apportionment. Given that two physicians concluded that McGivney's disability should be equally split between

the two employers, the Commission's decision was supported by substantial and competent evidence. Aerocet's argument that the Commission's findings are not supported by substantial and competent evidence is rejected.

**E.    Aerocet must reimburse Quest for any over-payment Quest made to McGivney.**

At oral argument, Quest requested reimbursement from Aerocet for payments Quest made to McGivney that were actually Aerocet's obligation. The basis for Quest's request is Idaho Code section 72-313. Quest's request is well founded in fact and law. This case will be remanded to the Commission to enable it to calculate the amount due to Quest (or its surety) from Aerocet (or its surety) for any amounts overpaid by Quest (or its surety).

**F.    No attorney fees will be awarded.**

1.  <u>McGivney is not entitled to attorney fees on appeal under Idaho Appellate Rule 11.2.</u>

McGivney contends that he is entitled to an award of attorney fees on appeal because Aerocet's appeal was frivolous. The basis for McGivney's claim is Rule 11.2 I.A.R. That Rule reads as follows:

> (a) Every notice of appeal, petition, motion, brief and other document of a party represented by an attorney shall be signed by at least one (1) licensed attorney of record of the state of Idaho, in the attorney's individual name, whose address shall be stated before the same may be filed. . . . The signature of an attorney or party constitutes a certificate that the attorney or party has read the notice of appeal, petition, motion, brief or other document; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If the notice of appeal, petition, motion, brief, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the notice of appeal, petition, motion, brief or other document including a reasonable attorney's fee.

This Rule has been construed to warrant an award of attorney fees when the party who brought or pursued the appeal did so in bad faith or that the appeal was brought for an improper purpose. For instance, in *Painter v. Potlach Corp.*, 138 Idaho 309, 315, 63 P.3d 435, 441 (2003), we found that an award of attorney fees against an employee's attorney was not warranted because "there [was] . . . no persuasive indication that [he] interposed the appeal for an improper

13

purpose." Consequently, McGivney's request for attorney fees pursuant to I.A.R. 11.2 will be denied.

2. Quest is not entitled to attorney fees under Idaho Code section 72-804.

Quest also seeks attorney fees against Aerocet. Quest predicates its claim on Idaho Code section 72-804, alleging that the only purpose for Aerocet's appeal was to reweigh the evidence.

Idaho Code Section 72-804 reads as follows:

72-804. ATTORNEY'S FEES — PUNITIVE COSTS IN CERTAIN CASES. If the commission or any court before whom any proceedings are brought under this law determines that the employer or his surety contested a claim for compensation made by an injured employee or dependent of a deceased employee without reasonable ground, or that an employer or his surety neglected or refused within a reasonable time after receipt of a written claim for compensation to pay to the injured employee or his dependents the compensation provided by law, or without reasonable grounds discontinued payment of compensation as provided by law justly due and owing to the employee or his dependents, the employer shall pay reasonable attorney fees in addition to the compensation provided by this law. In all such cases the fees of attorneys employed by injured employees or their dependents shall be fixed by the commission.

The statute relied on by Quest is a remedial statute that authorizes an award of attorney fees where "the employer or his surety contested a claim for compensation made by an injured employee . . . without reasonable ground . . . ." While Idaho Code section 72-804 provides for an award of attorney fees where an employer or his surety unreasonably denies a claim, the right to recover attorney fees is limited to an employee or his dependent.[3] Quest has not identified any case in which this Court has awarded attorney fees to an employer or surety under this statute. The statute clearly fulfills a remedial purpose for an injured worker

---

[3] The language of the statute does not support Quest's claim. For instance, the statute speaks in terms of "a claim for compensation brought by an injured employee . . ." Quest's claim is not one "brought by an injured employee . . ."; rather, it is a claim for contribution brought by Quest's surety. Likewise, the next portion of the statute conditions liability when "an employer or his surety neglected or refused within a reasonable time after receipt of a written claim for compensation to pay to the injured employee . . . ." Again, Quest's surety's claim is not that of an "injured employee." The third basis for an award of attorney fees arises when "without reasonable grounds [the surety] discontinued payment of compensation as provided by law justly due and owing to the employee . . . ." Once again, the statute deals with benefits "owing to the employee." Quest's surety is not an employee. It is a surety seeking contribution from another surety. The leading treatise in this field is in accord: "As to who is entitled to attorneys' fees, most statutes are phrased in terms of an award to the 'claimant' or the 'employee.' Obviously, under such a statute, third parties are not entitled to fees even though they prevail in asserting a claim against an injured worker's employer." 13 Arthur Larson et al., *Larson's Workers' Compensation Law* § 133.02[2][c] (2018) (footnotes omitted).

14

or his dependent. It was not designed for or intended to result in attorney fees being awarded from one surety to another. For the reasons stated, Quest's application for an award of attorney fees is rejected.

## IV. CONCLUSION

For the foregoing reasons, we affirm the Commission's decision. We remand the case to the Commission for it to calculate the amount of any reimbursement due to Quest from Aerocet.

Chief Justice BURDICK, Justices BRODY, BEVAN and MOELLER, CONCUR.